CHOCTAW & MEMPHIS RAILROAD COMPANY v. SPEER HARDWARE COMPANY.

Opinion delivered December 20, 1902.

1.  RAILROAD—SUBCONTRACTOR'S LIEN.—The act of March 31, 1899, giving subcontractors, etc., a lien for supplies furnished to a railroad company, does not apply to supplies furnished prior to its passage. *Choctaw & M. R. R. Co.* v. *Sullivan,* 70 Ark. 262, followed. (Page 131.)

2.  SAME—CONSTRUCTION OF MECHANICS' LIEN ACT.—The act of March 31, 1899, creating a lien in favor of "every person who furnishes any board, provisions or supplies for any employees or teams of any railraod employed in the construction and repair thereof," does not create a lien against a railroad company for board, provisions or supplies furnished to the employees or teams of a subcontractor engaged in the construction of its road. (Page 131.)

3.  SAME—PRIVITY OF CONTRACT.—The act of March 31, 1899, neither in terms nor by implication, creates a lien in favor of one not in privity of contract with the railroad company for anything beyond that which has entered into or become a part of the railroad. (Page 132.)

Appeal from Scott Circuit Court in Chancery.

STYLES T. ROWE, Judge.

Reversed and dismissed.

STATEMENT BY THE COURT.

The several actions in this case, consolidated and tried as one, were brought by the appellees, the Speer Hardware Co. *et al.,* to obtain judgments against, and have liens declared upon, the Choctaw & Memphis Railroad Company for goods, wares and merchandise sold to sub-contractors, under contracts for the building of the road made prior to the 31st of March, 1899.

The facts in the case are substantially as set out in the abstract of the appellant, and are as follows:

Prior to November 30, 1898, the Choctaw Construction Company entered into a contract with the Choctaw & Memphis Railroad Company to build the railroad of the latter company from Howe, Indian Territory, to Little Rock, Arkansas. On November 30, 1898, the said construction company sublet this work to Johnston Brothers & Faught and McCarthy & Reichardt. This firm divided the work, Johnston Brothers & Faught taking 100 miles of the west end extending to the Indian Territory line. Between November 30, 1898, and December 31, 1898, Johnston Brothers & Faught sublet all the bridge work and rock work upon the said 100 miles of road to Felix & Cullin, who, in turn, sub-contracted with various parties to do different portions of the work. All of these contracts were entered into prior to December 31, 1898. The contract betweeen Felix & Cullin and Johnston Brothers & Faught is identical in every respect, except as to prices and quantity of work, with the contract between Johnston Brothers & Faught and the Choctaw Construction Company. On April 11, 1900, the appellee, Speer Hardware Company, instituted suit for $1,841.54 upon open account, and sought to have a lien enforced against the Choctaw & Memphis Railroad Company for that amount, alleging in their complaint "that each and every item set out in said account was furnished by said hardware company to the said Felix & Cullin with the consent and by the authority of said Johnston Brothers & Faught toward the building, construction and equipment of said road, and that said material was used by said Felix & Cullin in the building and construction of said road." Of the amount sued for, $1,841.54, the sum of $1,200.37 was sold prior to March 31, 1899, and the balance subsequent to that date.

The claim of Forrester & Fisher is based upon an open account for beef alleged to have been sold by them to the sub-contractors under Felix & Cullin.

The claim of Harrison Ball is for sundry merchandise alleged to have been sold during the months of April and May, 1899, to Felix & Cullin for their sub-contractors, and the claim of Boothe & Ball is for merchandise sold to the said Felix & Cullin and alleged to have been furnished to their sub-contractors during the months of March and April, 1899. The complaints in the three latter cases allege in substance that at the request of the defendants, Felix & Cullin, the plaintiff furnished merchandise and supplies to the men employed by them in the construction of said Choctaw & Memphis Railroad to aid in the construction of same, which merchandise and supplies were contracted and sold to Felix & Cullin with the express understanding that they would be paid for by Johnston Brothers & Faught, the contractors under the defendant, Choctaw & Memphis Railroad Company, and that under said arrangement the plaintiffs furnished to the defendants the merchandise set out in the several accounts filed with their respective complaints.

The answers of the Choctaw & Memphis Railroad Company and the Choctaw Construction Company in each of said causes specifically deny each and every allegation of the respective complaints, and by special answers set up the fact that J. F. Cullin, of the firm of Felix & Cullin, is a necessary party to the action, and asked that the causes be dismissed because he is not made party defendant.

The answer of Johnston Brothers & Faught to the respective complaints, in apt terms, deny specifically each and every allegation of the complaints, specifically denying that any of the merchandise sold by the respective appellees was for the construction or equipment of said railroad, or that same were used for that purpose. By agreement of parties all of above cases were consolidated and transferred to the equity docket to be tried as one case. The court rendered judgment in favor of the respective appellees for all merchandise sold to the said Felix & Cullin and their sub-contractors subsequent to March, 1899, and declared same to be a lien upon the Choctaw & Memphis railroad, to which judgment and finding of the court proper exceptions were saved by all of the defendants, and from this judgment the railroad company, construction company and Johnston Brothers & Faught appeal.

Mr. Speer, the manager of the Speer Hardware Company, testified on cross-examination that the Speer Hardware Company

was a dealer in general merchandise, both as a jobber and as retail merchant; that the goods sold to Felix & Cullin were such as they usually kept in stock to sell to the general trade; that same were sold to Felix & Cullin as to other commercial creditors, believing Felix & Cullin would be able to pay for the goods, and the credit was extended to them upon their credit and the statement of Mr. Faught (which he says had some weight with him) that they were good people; that they solicited the trade of Felix & Cullin, and sold goods to them as they did to other customers; that he knew that the goods furnished were such as were usually used by railroad contractors in doing work in the construction of railroads. The merchandise was all charged to Felix & Cullin. The deposition of neither Felix nor Cullin, nor of any of the sub-contractors for whom the merchandise is alleged to have been purchased, was taken by the Speer Hardware Company, and there is no testimony establishing that any of the merchandise sold by said Speer Hardware Company was used in the construction of the Choctaw & Memphis railroad, but it is established by the testimony on behalf of the defendants that no part of said merchandise entered into the construction or equipment of said road; that none of it formed a part of, or in any way was used in building and constructing, same. The items furnished by said hardware company consisted of rope, block and tackle, chains, wheelbarrows, wedges, axes, blacksmith's outfit, such as forges, anvils and tools, and sundry steel and tools such as are usually used in quarrying stone, used in getting stone from the quarries.

It is affirmatively shown that several of the outfits purchased for the sub-contractors were not used by them, as they abandoned their contracts before doing much work, and these were either carried away by them or sold to other parties; that a large part of such merchandise as was sold by said hardware company was not used up or worn out in quarrying stone, or in doing work, by said sub-contractors, and when the work was completed these outfits, tools, etc., were carried away by them to be used on other work.

The claims of Harrison Ball and Boothe are for such merchandise as usually is sold in a general merchandise store, and consists of corn, oats, flour, lard, sugar, canned goods and dry goods. The claim of Forrester and Fisher is wholly for meat (beef and pork).

The evidence on behalf of defendant with respect to these several claims is to the effect that the merchandise sold to Felix &

Cullin was sold to them without the authority, knowledge or consent of either the Choctaw & Memphis Railroad Company, the Choctaw Construction Company, or Johnston Brothers & Faught; that no part of same in any way entered into the construction or equipment of said road, nor was the same used in the construction or building thereof.

*Ira D. Oglesby,* for appellant.

Appellees have no lien under the act of 1899.  65 Ark. 183; 59 Ark. 82; 15 Am. & Eng. Enc. Law, 24; Boisot, Liens, 195; 37 Kan. 110; 6 Mo. App. 205; 33 Neb. 29; 65 Mich. 655; 81 Mo. 264; 40 Cal. 185; 81 Mo. App. 264; 15 Am. & Eng. Enc. Law, 40; 61 Ill. 283; 16 Atl. 636; 7 Wis. 277.  No lien exists for materials and supplies unless a contractual relation exists between the render and the railroad.  59 Ark. 53; 54 Fed. 723; 15 Am. & Eng. Enc. Law, 46.

*Mechem & Bryant,* for appellant.

Merchants furnishing material in the regular course of business have no lien.  59 Ark. 81; 65 Ark. 183; 132 U. S. 220; 43 Ark. 480.

*Read & McDonough,* for appellees.

The presumption is that the material was used for building the road.  50 Kan. 362; 32 Ark. 59.  The lien law should be construed fairly, and not against those who would avail themselves of its provisions.  46 Mo. 337, 595; 6 Tex. App. 565.  Appellees are entitled to a lien for the material furnished.  83 Pa. St. 126; 59 Mo. App. 6; 5 Colo. 23; 4 Abb. Pr. 472; 20 N. Y. 247; 5 Ill. 527; 24 Neb. 113-124; 20 Colo. 519; 15 Wis. 298.

*Evans & Smith,* for appellees.

Retroactive legislation may be enforced, if its operation does not interfere with vested rights.  44 Ark. 365; 30 Ark. 560; 43 Ark. 420; 45 Ark. 410; 46 Ark. 333; 23 Am. & Eng. Enc. Law, 447; 3 Am. & Eng. Enc. Law, 757; 30 Ark. 745; 28 Ark. 440. Every statute is construed according to its legislative intent.  34 Ark. 263; 39 Ark. 353; 11 Ark. 481; 32 Ark. 131; 44 Ark. 265; 27 Ark. 418; 38 Ark. 205; 31 Ark. 119; 40 Ark. 410, 431; 24

Ark. 487; 35 Ark. 56. The appellants have no vested rights. 12 Sm. & Mar. (Miss.), 347; 1 N. Y. 213; Cooley, Con. Lim. 359; 22 N. H. 434; 2 Rich. (S. Car.), 43; 12 Ind. 37; 25 W. Va. 813; 15 Mich. 60. The right of a creditor to a remedy is not a vested right. 43 Ark. 420; Black, Cons. Prohibitions, 192; 4 Tex. 470; 7 Tex. 348; 3 N. H. 104; 50 Mo. 454; 77 Me. 270; 12 Ga. 437; 62 Miss. 29. The act is retroactive. 43 Ark. 420; 30 Ark. 745; 28 Ark. 440; 55 Ark. 571; 57 Ark. 220. The act should be liberally construed. Sand. & H. Dig., § 7222.

HUGHES, J., (after stating the facts). The decision of a question involved in this case was made by this court in case of the *Choctaw & Memphis Railroad Company* v. *Sullivan,* 70 Ark. 262. In that case it is decided that where cross-ties were furnished by a tie-maker to a sub-contractor, under a contract with the railroad made by the contractor prior to March 31, 1899, there was no lien enforceable against the railroad for the value of the ties so furnished; that the rights of the parties were governed by the law as it existed at the time the contract was made. The act of March 31, 1899, having been passed after the contract was made under which the lien was claimed, had no application.

A motion for reconsideration of that decision was made and argued by able counsel, on the ground that the act of March 31 was simply an extension of a remedy, but upon consideration it was overruled by the court. We adhere to that decision.

Inasmuch as the contracts in these cases under which the goods, wares and merchandise and supplies were furnished to the sub-contractors were all made before the passage of the act of March 31, 1899, that act has no application to this case, and there is no lien under that act against the railroad for the goods purchased. *Choctaw & Memphis Railroad Co.* v. *Sullivan,* 70 Ark. 262.

The act of March 31, 1899, provides: "Section 1. That section 6251 of Sandels & Hill's Digest be amended so as to read as follows: Every mechanic, contractor, sub-contractor, builder, artisan, workman, laborer, or other person who shall do or perform any work or labor, or cause to be done or performed any work or labor upon, or furnish any materials, machinery, fixtures or other things toward the building, construction or equipment of any railroad, or to facilitating the operation of any railroad, whether completed or not, and every person who performs work of any kind in the construction or repair of any railroad, whether under contract with the

railroad, or with a contractor or sub-contractor thereof, and every person who furnishes any board, provisions or supplies for any employees or teams of any railroad employed in the construction or repair thereof with the consent or authority of the person authorized to make such construction or repair, and every person who shall sustain loss or damage to person or property from any railroad for which a liability may exist at law, and every person who performs any valuable services, manual or professional, for any railroad by or from which such railroad receives a benefit shall have a lien on said railroad for such labor, materials, machinery, fixtures, board, provisions, supplies, loss, damage and services upon the roadbed, buildings, equipments, income, franchise, right-of-way, and all other appurtenances of said railroad superior and paramount, whether prior in time or not, to that of all persons interested in said railroad as managers, lessees, mortgagees, trustees and beneficiaries under trusts or owners."

In construing this act in the case of Macon *v.* Bank of Commerce, in the Pulaski chancery court, in a well considered and able opinion by Judge John Fletcher, as special chancellor, this question is well reasoned. He said: "It may be safely assumed that the purpose of the legislature in this enactment was * * * to give a lien to all those whose work and labor done or materials furnished have enhanced the value of the railroad,— [to all] persons, whether laborers, contractors, sub-contractors or others, whose labor or materials furnished, or caused to be furnished, have entered into and become part of the structure. * * * The statute, in express terms, creates a lien in favor of 'every person who furnishes any board, provisions or supplies for any employees or teams of any railroad employed in the construction or repair thereof with the consent or authority of the persons authorized to make such construction or repair. Now, it is evident that, if it had been the intention to create a lien for such things when furnished the contractor, the legislature would have said so. * * * The things must, by the terms of the statute, be furnished to the employees or teams of the railroad, not to those of the contractor."

In the case at bar everything was furnished to the employees, teams, etc., of the sub-contractors. The statute, neither in terms nor by implication, creates a lien in favor of one not in privity of contract with the railroad company for anything beyond that which has entered into or become a part of the railroad. *Giant-Powder Co.* v. *Oregon Pac. Ry. Co.,* 42 Fed. 475.

For the reasons that the articles furnished were furnished under contracts made prior to the passage of the act of March 31, 1899, and that there was no privity of contract between the sub-contractors and the railroad, and for the fact, as shown by the evidence, that none of the materials furnished entered into and became part of the railroad, the decree must be reversed, and the cause dismissed, which is accordingly done.