LOUISIANA & NORTHWEST RAILROAD COMPANY *v.* STATE.

75    435
181    40

Opinion delivered May 27, 1905.

1. RAILROAD—FOREIGN CORPORATION—FORFEITURE OF LEASE BY.—Under the act approved May 23, 1901, providing that the franchise and charter rights of any railroad company to a railroad acquired by lease shall be forfeited on certain grounds mentioned therein, the State may enforce the forfeiture of a lease, made by a foreign railroad corporation, of a railroad situated in this State. (Page 440.)

2. SAME—FORFEITURE OF LEASE.—It is competent for the State to provide that a foreign railroad corporation shall not enjoy a lease of a railroad in this State until it acquires it in conformity to the statute, and that a failure to conform to the statute shall be a ground of forfeiture. (Page 441.)

3. RAILROAD LEASE—FORFEITURE.—The act of May 23, 1901, providing for the forfeiture of a lease of a railroad if such lease was not made in conformity with the statute governing the making of such leases, or for other causes herein named, is not retroactive. (Page 441.)

4. QUO WARRANTO—ABOLISHMENT.—Though the Supreme Court was clothed by the Constitution (art. 7, § 4, 5) with power to issue, hear and determine the writ of quo warranto in aid of the appellate jurisdiction, the writ and the information in the nature of the writ, as original proceedings, were abolished by the Code (Kirby's Digest, § § 7981, 7982.) (Page 442.)

5.—SAME—JURY TRIAL.—In quo warranto proceedings in courts of original jurisdiction, brought under statutory provisions to annul, vacate and cancel a charter or franchise or any other property right (not including the title of public office), the right of trial by jury of issues of fact is a constitutional right. (Page 442.)

Appeal from Columbia Circuit Court.

MINOR WALLACE, Special Judge.

Reversed.

### STATEMENT BY THE COURT.

This suit was brought under sections 6749-6751, Kirby's Digest, which in original form was as follows:

"Be it enacted by the General Assembly of the State of Arkansas:

"Section 1. The franchise and all charter rights whatsoever of any railroad company in and to all railroad, roadbed, bridge, depot, or other railroad property, as well as the possession of and right to operate same, which may have been acquired by such railroad under and by virtue of any lease, shall be forfeited, and such railroad company ousted of its right thereunder to operate, possess or control the same, if such lease shall not have been made in conformity with the statute governing the making of such leases, or if such lessee shall fail to maintain said property in good repair so as to afford safe and reasonably prompt facilities of travel to the public, or shall fail to furnish reasonable shipping accommodations for freight to its patrons.

"Sec. 2. This act may be enforced, at the instance of the State, by her Attorney General, by information in the nature of quo warranto or other proper suit in any court having jurisdiction.

"Sec. 3. That whenever any railroad company shall, by the judgment of any court rendered in any suit instituted by the State, be ousted of the possession of or right to operate, any railroad, bridge, depot or other property leased to such company by any other railroad company, then such lessor shall immediately succeed to all the rights in and to said leased property, had and enjoyed by it at the time of the execution of such lease; provided such lessor shall have been in no way responsible for the acts upon which said judgment was based, except in the making of said lease.

"Sec. 4. That all laws in conflict herewith are hereby repealed, and this act take effect from and after its passage.

"Approved May 23, 1901."

The complaint filed October 22, 1901, was as follows:

"The State of Arkansas, by her Attorney General, states and shows to the court: That the defendant, the Louisiana & Northwest Railroad Company, is a railroad corporation organized under the laws of the State of Louisiana. That some time in April, 1897, the said Louisiana & Northwest Railroad Company pretendedly leased for 21 years from the defendant, the St Louis Southwestern Railway Company, a certain line of the railroad, a branch of the said St. Louis Southwestern Railway Company, running from the town of McNeil to Magnolia, Columbia County, Arkansas, a distance of six and four-tenths (6.4) miles, known as the Magnolia branch, together with the right of way and all appurtenances thereunto belonging; that defendants are requested to attach a copy of said lease to their answer. That no notice of the making of said lease or of the meeting of the directors at which it was made was ever given, as provided by law; nor was the making of said lease ever approved by a two-thirds majority of the stockholders or directors of said St. Louis Southwestern Railway Company; that said Louisiana & Northwest Railroad Company had not filed with the Secretary of State of Arkansas its articles of incorporation as required by law. Plaintiff further alleges that said Louisiana & Northwest Railroad Company has for a long time past negligently, knowingly and willfully permitted the said line of railroad, leased to it as aforesaid, to decay, to be out of repair, to become unsafe and wholly unreliable in the carriage of passengers and freight between McNeil and Magnolia, Ark.; that said Louisiana & Northwest Railroad Company has failed and refused to furnish cars or reasonable transportation for freight along said railroad, leased, as aforesaid, and has refused to take freight when tendered it at Magnolia for McNeil and other points on the main line of the railroad connected therewith.

"Wherefore, he prays that a writ of quo warranto be issued, directed to and served on said Louisiana & Northwest Railroad Company, and said St. Louis Southwestern Railway Company, commanding them to appear before this court, and show cause,

if they can, why the right and franchise of said Louisiana & Northwest Railroad Company to possess, use, and operate said line of railway under said lease, and all other property described in said lease, should not be declared forfeited and taken from it, and it be ousted of the possession and the right to the possession thereof."

Every material allegation of fact was put in issue by specific denial and positive allegation affirming the contrary of the facts alleged by the State. Issues of law were also raised which are discussed in the opinion. The case was tried before the court, a jury trial being denied, and the following judgment entered:

"And now, it appearing to the court that the defendant, the Louisiana & Northwest Railroad Company, at and before the institution of this suit, was, and still is, operating the railroad extending from Magnolia, Ark., to McNeil, Ark., a distance of six and four-tenths miles, and known as the Magnolia branch, under a written contract of lease, executed in April, 1897, with its codefendant, and it further appearing that said lease was not executed under authority of law, and not in accordance with the statute directing how such leases may be made, the court finds that said lease is invalid and of no effect.

"It further appearing that at the time of the institution of this suit, and for a long time prior to said time, the defendant, the Louisiana & Northwest Railroad Company, did not maintain said railroad in a condition so as to afford to the traveling public reasonably safe facilities of travel, and at and during said time did not furnish to its patrons reasonable shipping accommodations for freight, and that such failure was wilful, unnecessary, without reasonable excuse, and was continuous.

"It is further appearing that the St. Louis Southwestern Railway Company, one of the defendants herein, is not shown to have been responsible for the unsafe condition of said railroad, nor the failure to furnish proper shipping accommodations to the patrons of said road in any other way than the making of said lease.

"The court is of the opinion that the right of the defendant, the Louisiana & Northwest Railroad Company, to any longer

operate, possess or control said railroad should be abrogated, and all of its charter rights claimed or owned by it so to do should be forfeited, and that said road should revert back to the St. Louis Southwestern Railway Company, and the possession thereof should be given to it, and that it be permitted and directed to proceed to operate said road in accordance with the law and its charter contract with the State of Arkansas.

"It is therefore considered, ordered and adjudged by the court that the defendant, the Louisiana & Northwest Railroad Company, quit and surrender possession of the railroad extending from Magnolia, Ark., to McNeil, Ark., known as the 'Magnolia branch,' and described in a certain lease executed by said Louisiana & Northwest Railroad Company and its codefendant, St. Louis Southwestern Railway Company, and shall quit and surrender possession of all the depots, sidetracks and other appurtenances belonging thereto, as well as all other property covered by and described in said lease. And it is further considered, ordered and adjudged by the court that all charter rights owned or claimed by said defendant railroad company to operate, possess, control or in any manner interfere with said railroad, depots and other property above described, be and is hereby forfeited, and any effort on the part of said Louisiana & Northwest Railroad Company to attempt in any way to interfere with, operate or possess any part, or all, of said railroad, the appurtenances thereunto belonging, or other property above described shall be a contempt of court. It is further ordered and directed that the said defendant, the St. Louis Southwestern Railway Company, take possession of said railroad, the appurtenances thereunto belonging and property described above, and at once proceed to operate the same in accordance with the laws governing railroad companies in this State, and that the defendant, Louisiana & Northwest Railroad Company, pay all costs in and about this cause extended."

From this judgment the railroad has prosecuted this appeal.

*J. M. Moore* and *W. B. Smith,* for appellant.

Where a retroactive construction of an act will affect vested rights, the court will disregard the literal meaning, and give it

such meaning as will give the act a prospective effect. 59 Ark. 408; Endlich, Interp. Stat. § § 271-273; 56 Ark. 495; 14 Ark. 464; 6 Ark. 484; 5 Ark. 510; 70 Ark. 262. The State cannot complain of a waiver by the stockholders of an act that is purely for their personal benefit. 145 U. S. 393; 51 Fed. 324. Forfeitures are only allowed for the plain abuse of power by which the corporation fails to fulfill the design and purpose of its organization. 10 Ohio, 535; 32 Oh. St. 487; 51 Miss. 602; 3 L. R. A. 518. Statutes working a forfeiture are strictly construed. 13 Am. & Eng. Enc. Law, 55; Endlich, Interp. Stat. § 343; 59 Ark. 408.

*Robert L. Rogers, Attorney General, G. W. Hendricks* and *A. S. Killgore,* for appellant.

In the execution of the lease neither the laws of Arkansas nor Missouri were complied with. 71 Ark. 451; 12 Fed. 513; Kirby's Dig. § 6742. Trial of the question of fact by the court was proper, some of the proceedings being in the nature of quo warranto. 50 Ark. 275; 32 Ark. 557; 34 Ark. 707; 26 Ark. 281; 40 Ark. 290.

*J. M. Moore* and *W. B. Smith,* for appellant in reply.

The act of May 23, 1901, violates the Constitution of United States. 9 Mich. 284; 32 N. W. 907; 5 N. W. 275; 9 Wall. 50; 96 U. S. 499. The act is not a valid exercise of a police power. 105 U. S. 13; 101 Fed. 91; 16 Am. Rep. 611. Appellant was entitled to a trial by jury. 111 U. S. 460; 63 Ark. 134; 32 Ark. 557; 50 Ark. 275; 40 Ark. 290; 163 Mass. 446; 1 Co. Inst. 155; 4 Cow. 97; 6 Wall. 290; 51 N. Y. 161; 34 Fla. 48; 14 Mich. 243; 16 Mich. 133; 33 Mich. 241; 11 Ill. 552; 59 Ill. 94; 15 Wend. 113; 3 S. & R. 28; 49 Ala. 43; 15 Col. 570; 14 Wis. 115; 63 Ga. 589; 14 Oh. 6; 4 Pa. 117; 61 Ind. 406. The findings of fact are not sustained by the evidence. 61 Ind. 540.

HILL, C. J., (after stating the facts.)   1.   It is insisted that the State has not the power to provide for the forfeiture of a lease made by a foreign corporation, and that the terms of the act providing for a forfeiture, under the conditions stated, of

"the franchise and charter rights" cannot be held applicable to a foreign corporation operating in this State under lease.

A foreign railroad corporation can only lease and operate in this State by virtue of express statutes permitting it to do so, and the right to enter the State is conferred for the welfare of the State; and when that right is not exercised for the welfare of the State, it is within the power of the sovereignty which conferred it to withdraw it. The terms employed may not be technically accurate, but they are substantially so. This court held in *Russel* v. *St. Louis S. W. Ry Co.*, 71 Ark. 451, that a foreign railroad corporation complying with the laws of this State becomes a domestic corporation, and capable of exercising eminent domain, which can only be exercised by domestic corporations. Hence it is not inappropriate to describe the rights acquired, on the corporation becoming domesticated by conforming to the laws of this State, as the "franchise and charter rights." The fact that its right in this State authorizes a contract—a lease—cannot alter its status. The lease is acquired and held only in virtue of the franchise to operate its road in that way, and is subject to the law requiring it to perform its duty to the public. A contract made under a franchise cannot reach beyond the rights acquired by the franchise itself and afford immunity from public duties. Both franchise and lease have written in them the law requiring the performance of the duty to the public or the sufferance of a forfeiture of rights for dereliction in this respect. The action of the State is not against property rights acquired through the lease, and it seeks no confiscation of property, but merely a surrender of the right to further enjoy its privileges because it has failed in its duties to the public. The suit can be maintained.

2. The act is not retrospective. *Duke* v. *State,* 56 Ark. 485; *Choctaw & M. Rd. Co.* v. *Sullivan,* 70 Ark. 262; *Choctaw & M. Rd. Co.* v. *Speer Hardware Co.,* 71 Ark. 126.

The act provides, among other grounds of forfeitures, "if such lease shall not have been made in conformity with the statute governing the making of such leases." Clearly, it is competent for the State to provide that a foreign railroad corporation shall not enjoy a lease in this State until it acquires it in conformity to the statute, and a failure to conform to the statute on the sub-

ject shall be subject of forfeiture. 2 Spelling, Inj. & Ex. Legal Rem. § 1807. In this case the lease was made long prior to the enactment of this statute rendering such failure a ground of forfeiture of charter rights. The court found that the lease in question had not been made with the approval of two-thirds of the stockholders, nor had such lease been ratified at a meeting of the stockholders—two-thirds present or represented—specially called for that purpose, as provided in section 6742, Kirby's Digest. That the lease was approved by formal action of the stockholders is not questioned; that it was approved by acquiescence and receiving the benefits of it is apparent. It was by conduct so clearly ratified that neither party could recede from it on the ground of informality in its origin. It only lacked a literal compliance with this statute. Such lack of literal compliance was not a ground of forfeiture of the lease when it was made, and cannot be retrospectively made such when rights are builded upon it which were enforceable between the parties, and then valid. This is a statutory, not a common-law, right of forfeiture at the instance of the State. Therefore the court erred in forfeiting the lease upon this ground.

3. The next ground of forfeiture which the court sustained was a failure to furnish the patrons of the road reasonable shipping accommodations for freight. The evidence was insufficient to work a forfeiture on this ground. There was not much evidence on this issue, most of it being directed to the passenger facilities, and what there was on the subject did not show sufficient failure in public duty to forfeit the franchise on this ground, and doubtless it would not have been forfeited upon it alone.

4. On the alleged failure to "maintain said property in good repair, so as to afford safe and reasonably prompt facilities of travel to the public," there is substantial evidence justifying the court in finding that the appellant had failed in its duty to the public in this regard.

Although error was committed in adjudging the forfeiture on the other grounds, the judgment must be affirmed, unless this question of fact was one upon which the appellant had a constitutional right to trial by jury. The question in the first trial was submitted to a jury which disagreed, and on the second trial the court held that the appellant was not entitled to a jury trial,

and heard the case before the court. The appellant demanded a trial by jury, and has preserved proper exceptions to the action of the court in denying it. There was much ancient learning on the subject of writs of quo warranto and informations in the nature of quo warranto. A reference to the subject may be found in the recent case of *Moody* v. *Lowrimore,* 74 Ark. 421, and cases there cited. Those questions are academic now. While this court is clothed with jurisdiction to issue, hear and determine the writ in aid of its appellate jurisdiction, the writ and information, as original proceedings, are abolished by the Code. "Actions by proceedings at law may be brought to vacate or repeal charters and prevent the usurpation of an office or franchise." And actions to repeal or vacate a charter shall be in the name of the State, and brought and prosecuted by the Attorney General, or under his sanction and direction. Kirby's Digest, § § 7981, 7982. In considering these Code changes, the court said, through Chief Justice Cockrill:

"But the constitutional right to trial by jury is confined to cases which by the common law were so triable (citing authorities), and it was decided in *State* v. *Johnson,* 26 Ark. 281, that the right did not extend at common law to a civil proceeding in the nature of quo warranto against a public officer. The statute does not enlarge the right, nor attempt to extend it to cases of this or like nature (an usurpation of office case), as was held in *Williams* v. *Citizens,* 40 Ark. 290. * * * No claim for fees or emoluments was made by the plaintiff." *Wheat* v. *Smith,* 50 Ark. 266. *State* v. *Johnson,* 26 Ark. 281, is one of the leading American authorities to sustain the view that trial by jury was not a right at common law on quo warranto proceedings to oust an alleged usurper from office. There is much conflict of authority on that question. It seems that the weight of authority is against that view, but the same rule is adhered to in *Wheat* v. *State,* since the adoption of the Code, when no fees or emoluments are claimed, and merely the title to the office is in question. Whether *State* v. *Johnson* is authority for the nature of the writ as an original proceeding under the present Constitution is not a question in this case.

In the case of *Taylor* v. *Beckham,* 178 U. S. 548, the Supreme Court of the United States held that a public office was

not property, and this view will unquestionably lend great weight to the line of authorities like *State* v. *Johnson,* and *Wheat* v. *Smith,* denying trial by jury in usurpation of office proceedings. Chief Justice Cockrill evidently had that distinction in mind in *Wheat* v. *Smith* when he called attention to the fact that fees and emoluments were not involved in that suit. When a franchise or charter is in issue, and the manifold contractual rights growing out of them, property in its highest sense is involved. In quo warranto proceedings at common law brought to vacate charters, trial by jury seems universally to have been accorded to determine the facts.

In *People* v. *Albany & S. R. Co.,* 57 N. Y. 161, an action by the Attorney General in the nature of quo warranto to try the title of directors controlling a corporation, the court said: "This issue, being strictly a legal issue in its character, is one in the trial of which, in the language of the Constitution, the trial by jury has been heretofore used. Such a trial was therefore the constitutional right of the parties."

The Supreme Court of Florida said: "Our examination into the matter has conducted us to the conclusion that at the time of the Revolution the trial of pure questions of fact in such proceedings was by jury." The court then proceeds to cite and quote from the common-law authorities showing that issues of fact were uniformly triable by jury. The court proceeded: "In *Rex* v. *Bennett,* all the judges of England were equally divided, the division being over the question whether a new trial could be granted after a verdict in favor of the defendant in such proceeding. The view that the suit was criminal then widely prevailed, but this point was finally settled in favor of the view above announced—that the action, though criminal in form, was regarded as a civil suit for the purpose of trying the right to the franchise." *Buckman* v. *State,* 34 Fla. 48. In *Attorney General* v. *Sullivan,* 163 Mass. 446, the Massachusetts court said: "Without considering whether a suit or information to declare forfeited the charter of a private corporation would not be held to be a controversy concerning property within the meaning of this article, we are of the opinion that a public office, such as that of president of the common council of the city of Lowell, is not

property within the meaning of this article." The common-law authorities, showing that issues of fact in quo warranto were triable by jury, are collected in this case.

The Indiana court said that the decided weight of authority was that issues of fact in quo warranto proceedings were triable by jury at the time the common law was inherited by the colonies, and cites the authorities on both sides of the question. *Reynolds* v. *State,* 61 Ind. 393.

In *Com.* v. *Delaware & Hudson Canal Co.,* 43 Pa. St. 295, a proceeding by quo warranto to control the improper exercise of corporate powers, and oust the corporation from the excessive exercise of them, the court said: "It is a matter of no importance to the parties whether this authority is exercised in the common law or in equity form, provided the right of trial by jury is not interfered with, as it cannot be in this case." See, further, *People* v. *Doesberg,* 16 Mich. 133; *State* v. *Burnett,* 2 Ala. 140; *State* v. *Allen,* 5 Kan. 213. While some of the cases referred to and many reviewed in those cases are dealing with the question of public office, and their conclusions are different from the rulings of this court on the subject, yet it is thought that a consideration of them show beyond question that, so far as franchises and corporate interests and property rights are concerned, it was thoroughly settled at common law that issues of fact were triable by jury. That being true, then that right is preserved to litigants by the Constitution. Therefore, the court is of opinion that in quo waranto proceedings in courts of original jurisdiction brought under the Code and statutory provisions to annul, vacate and cancel a charter or franchise or any other property right (not including title to public office) the right of trial by jury of issues of fact is a constitutional right.

The case is reversed, and the cause remanded, with directions to try the issues of fact by jury.