Paul E. HOPPER *v.* Tom GARNER

96–1423                                          944 S.W.2d 540

Supreme Court of Arkansas
Opinion delivered May 12, 1997

*Appellant,* pro se.

*J. Scott Davidson* and *Tom Garner,* pro se, for appellee.

ANNABELLE CLINTON IMBER, Justice. This appeal involves a dispute over who is the rightful city attorney of Horseshoe Bend. The appellant, Paul Hopper, filed a usurpation-of-office action against the appellee, Tom Garner. The jury rendered a verdict for Garner, and Hopper appeals. Finding no reversible error, we affirm.

In 1994, Paul Hopper was elected city attorney of Horseshoe Bend, Arkansas. During litigation concerning another matter, Hopper discovered that two people had trespassed on his property. Hopper asked the prosecuting attorney to file a criminal trespass action against these individuals, but he refused. Hopper could not file the criminal action as city attorney because he was personally interested in the case. Therefore, Hopper asked Mayor Charles Mowder to appoint a special city attorney to litigate the case.

On Wednesday, October 4, 1995, Mayor Mowder appeared at Hopper's office to discuss the matter. When the mayor refused to appoint a special attorney, Hopper offered, "If you will sign the paperwork, I will give you an early Christmas present and resign as city attorney on Friday." Before leaving town the next morning, the mayor administered the oath of office to the appointed special city attorney who then filed the criminal trespass action in municipal court.

Meanwhile, Hopper placed on the mayor's desk a letter of resignation that said, "As we agreed last night, I hereby resign my office as City Attorney effective at 4:00 o'clock p.m. on Friday, October 6, 1995." Later that afternoon, Hopper discussed the matter with the chief of police who persuaded Hopper to tender his resignation in person when the mayor returned on October 6. Hopper then removed his letter of resignation from the mayor's desk. On Friday, October 6, 1995, the mayor returned to Horseshoe Bend and demanded that Hopper return his resignation letter. Hopper complied.

On October 9, 1995, the mayor sent the following letter to the special city attorney:

> Since Paul Hopper has seen fit to resign as of Friday, October 6, 1995 at 4:00 p.m. there will be no need for your acting as special city attorney and we therefore rescind the authority and oath administered on Thursday, October 5, 1995. The new city attorney will handle this as well as all other matters.

The prosecuting attorney volunteered to handle the city's affairs pending the appointment of a new city attorney, and obtained a *nolle prosequi* of the criminal trespass action.

On November 8, 1995, Hopper attempted to withdraw his resignation by sending the following letter to the mayor and the City Council:

> As my resignation was conditional and the condition was not met, and since the council has not accepted the resignation, I withdraw my resignation as City Attorney effective at 3:59 o'clock p.m. on October 6, 1995. I am this date reclaiming the office. At the council meeting on Monday, I will take my seat unless a majority of the members of the council agree that I should not.

At the aldermen's request, Hopper did not appear at the next city council meeting.

On November 15, 1995, the mayor hired Tom Garner as the new city attorney. The next day, Hopper informed Garner, the mayor, and the city council that he objected to Garner's appointment because he had effectively withdrawn his resignation. The City Council agreed to review the matter at its next meeting.

During the December 11, 1995, meeting, the city council rejected Hopper's attempted withdrawal of his resignation. The council also adopted resolution 95-07 thereby approving the November 15, 1995, appointment of Tom Garner as city attorney.

In response, Hopper filed a usurpation-of-office action under Ark. Code Ann. § 16-118-105 (1987), requesting ouster of Garner from the office and the fees and emoluments he received while serving as city attorney. Prior to trial, the parties stipulated that Garner received $8,870.85 for his services as city attorney. The jury rendered a verdict for Garner, and Hopper filed a timely notice of appeal.

### I.  *Withdrawal of Resignation*

For his first argument on appeal, Hopper claims that he is the rightful city attorney of Horseshoe Bend because he withdrew his resignation before it was accepted. Hopper is correct that under Arkansas law a city officer's resignation may be withdrawn anytime prior to its acceptance. *Rider v. City of Batesville*, 220 Ark. 31, 245 S.W.2d 822 (1952). Whether the resignation was

actually withdrawn is, however, an issue to be resolved by the trier of fact. *Id.*

■ During the trial, Hopper argued that he withdrew his resignation in his November 8, 1995, letter to the mayor and city council. In this letter, Hopper declared that he was withdrawing his resignation, and that he would take his seat at the next city council meeting "*unless* a majority of the members of the council agree that [he] should not." (Emphasis added.) The council then voted to reject Hopper's withdrawal of his resignation. Based on these facts, the jury could have reasonably concluded that Hopper's withdrawal was conditioned upon the city council's approval. Thus, we hold that there was sufficient evidence from which the jury could have concluded that Hopper's resignation was never effectively withdrawn. Accordingly, we affirm on this point.

## II.   Right to a Jury Trial

■ Next, Hopper asserts that the trial court erred when it granted Garner's request for a jury trial. According to the Arkansas Constitution, "the right of trial by jury shall remain inviolate, and shall extend to all cases at law, without regard to the amount in controversy." Ark. Const. art. 2, § 7. The right to a trial by jury does not secure the right in all possible instances, but only in those cases that were so triable at common law. *McClanahan v. Gibson*, 296 Ark. 304, 756 S.W.2d 889 (1988); *Dunn v. Davis*, 291 Ark. 492, 725 S.W.2d 853 (1987).

■ Hence, the relevant inquiry is whether, Garner, as a defendant in a usurpation action, was constitutionally entitled to a jury trial. In *Wheat v. Smith*, 50 Ark. 266, 7 S.W. 161 (1887), we recognized that although there was no common law right to a jury trial in usurpation-of-office cases when the plaintiff merely requested ouster of the alleged usurper, such a right might exist if the plaintiff also made a claim for fees or emoluments. In *Louisiana & Northwest R.R. Co. v. State*, 75 Ark. 435, 88 S.W. 559 (1905), the plaintiff requested ouster and the return of the usurped property (the railroad franchise and the contractual rights growing out of it), and thus we found that it was entitled to a jury trial.

In his complaint, Hopper requested both the ouster of Garner from the office of city attorney, and the fees and emoluments he received while holding this office. Thus, according to *Wheat* and *Louisiana*, Garner had a constitutional right to a jury trial. In response, Hopper argues that because the parties stipulated to the amount of fees earned by Garner there was no factual issue to be resolved by the jury. Regardless of whether the amount of fees is liquidated or disputed, the jury must still decide the underlying factual issue of who is rightfully entitled to the office. Therefore, we conclude that the trial court did not err when it granted Garner his constitutional right to a jury trial in this case.

### III. Jury Instructions

For his final argument on appeal, Hopper claims that the trial court improperly instructed the jury in several respects. As we have held on numerous occasions, a trial court must give a jury instruction if there is some evidence to support it. *Echols v. State*, 326 Ark. 917, 936 S.W.2d 509 (1996); *Yocum v. State*, 325 Ark. 180, 925 S.W.2d 385 (1996). Thus, we must decide whether there was sufficient evidence to warrant the giving of the following jury instructions.

#### A. Resignation by Implication

In his first challenge to the jury instructions, Hopper asserts that the trial court erred when it gave, over his objection, the following instruction on resignation by implication:

### INSTRUCTION NO. 8

It is not necessary that a resignation from a public office be couched in any particular words, it being only necessary that the person resigning evince a purpose to relinquish the office. No formal method is necessary, but the resignation may be written or oral, or it may be implied from conduct. In this regard, if you find that the plaintiff accepted an office or position which was incompatible to that of city attorney of Horseshoe Bend, Arkansas, you must find by implication that plaintiff resigned the office of city attorney of Horseshoe Bend, Arkansas.

> If it is your finding that plaintiff resigned the office by accepting an office or position which was incompatible with that office, you must find that plaintiff could not withdraw his resignation.

On appeal, Hopper contends that there was no evidence that he "accepted an office or position which was incompatible to that of city attorney," and thus the judge should not have given the instruction. We disagree with this assertion for several reasons.

First, Hopper testified that a few days after he resigned as city attorney, he agreed to represent two defendants on charges pending in the City Court of Horseshoe Bend. Although he did not appear in court or accept fees for his services, Hopper did give advice, obtain documents, make inquiries, and procure continuances on behalf of these two clients. Moreover, the court clerk testified that at one time Hopper was listed on the docket sheets as the attorney for both defendants. Finally, both defendants testified on cross-examination that Hopper acted as their attorney in the city court.

We also find that this representation was "incompatible" with being the city attorney. Hopper argues that private practice is not incompatible with being the city attorney of Horseshoe Bend because the office is only a part-time position. This argument would have merit if Hopper represented a private client in a matter outside the jurisdiction of the city court. The facts, however, suggest that Hopper represented two criminal defendants in the City Court of Horseshoe Bend. Because we find that there was evidence to support Garner's argument that Hopper accepted a position incompatible with the office of the city attorney, we affirm the trial court's decision to instruct the jury on resignation by implication.

### B. Estoppel

Next, Hopper argues that the trial court erred when it instructed the jury on Garner's estoppel defense. Specifically, Hopper alleges that "Garner cannot rely upon the resignation, a public record, and ignore the withdrawal of resignation, another public record." As we have previously explained, Hopper's

November 8, 1995, letter created a genuine issue of fact as to whether Hopper's withdrawal was conditioned upon the city council's approval. Thus, we find no merit to Hopper's factual challenge to this instruction.

Furthermore, Hopper fails to cite a single legal authority in support of this argument on appeal. We have repeatedly admonished appellants that we will not do their research for them, and that we will affirm when the appellant's argument is neither supported by legal authority nor apparent without further research. *Granquist v. Randolph*, 326 Ark. 809, 934 S.W.2d 224 (1996); *Equity Fire & Casualty Co. v. Needham*, 323 Ark. 22, 912 S.W.2d 926 (1996). Because Hopper fails to provide a factual or legal basis for reversal, we affirm the trial court's ruling on this issue.

## C. *Duress*

Next, Hopper argues that the trial court committed reversible error when it granted Garner's motion for a directed verdict on the issue of duress, and refused to instruct the jury on the same. This court has previously held that the party asserting duress must

> show that the duress resulted from the other party's wrongful and oppressive conduct, and not by his own necessity. In addition, he must show that the wrongful conduct deprived him of his own free will and volition.

*Cox v. McLaughlin*, 315 Ark. 338, 345, 867 S.W.2d 460, 463 (1993).

During the trial, Hopper explained that he resigned only because he wanted to keep his promise to the mayor. Hopper did not contend that the mayor threatened him or did any other wrongful or oppressive act. In fact, Hopper's desire to protect the integrity of his word was an extraordinary exercise of his free will. Hopper simply failed to present any evidence that his resignation was rendered under duress, and therefore, we affirm the trial court's ruling.

### D.   Appointing Authority

As mentioned previously, the law in this state is that a city officer's resignation is not effective, and thus may be withdrawn, until it is accepted "by the proper authority."   *Rider v. City of Batesville*, 220 Ark. 31, 245 S.W.2d 822 (1952).   Based on this premise, Hopper argued at trial that he was the rightful city attorney for Horseshoe Bend because he withdrew his October 6, 1995, resignation before it was accepted by the proper authority.

Although Arkansas law does not designate who is the proper authority to accept a municipal officer's resignation, other jurisdictions have held that the entity or person that has the authority to designate the resigning officer's successor also has the authority to accept a resignation.   63A Am. Jur. 2d, *Public Officers and Employees*, §§ 172-74 (1984).   Arkansas law provides that a vacancy in the city attorney's office may be filled by the mayor and city council.   Ark. Code Ann. § 14-42-112(a)(2) (Supp. 1995). Accordingly, Hopper requested the judge to give the following jury instruction, which parallels the statute:

> when no resident attorney has been elected as municipal attorney, the mayor and the city or town council *may* appoint any regularly licensed attorney of this state to serve as the municipal attorney.

(Emphasis added.)   The trial judge refused to give the instruction because he found that the statute was permissive instead of mandatory.

As we have previously explained, the use of the word "may" instead of "shall" indicates that the statute is permissive or discretionary rather than mandatory. *Chrisco v. Sun Indus. Inc.*, 304 Ark. 227, 800 S.W.2d 717 (1990).   Thus, it may be inferred that the legislature deliberately used "may" in Ark. Code Ann. § 14-42-112(a)(2) to designate that the mayor and city council could appoint a replacement city attorney, or that the appointment could be made in some other manner.   Because the statute does not *require* second-class cities such as Horseshoe Bend to fill a vacancy in the city attorney's office in any particular man-

ner, we find that the trial judge correctly refused to give Hopper's proffered instruction.

Affirmed.