The Honorable Sam E. Angel State Representative P.O. Box 748 Lake Village, AR 71653-0748
Dear Representative Angel:
You have requested an Attorney General opinion concerning the Chicot County Park Board.
You indicate that the scenario giving rise to your questions is as follows:
In 1992, the Chicot County Quorum Court passed an ordinance creating an administrative board for the purpose of operating the Chicot County Park. The ordinance authorized the county judge to appoint the members of the board, each of whom was to serve a term of five years.
The caretaker and maintenance positions for the park were to expire in 1999, and the Chicot County Park Board was instructed to use Arkansas County Compliance Guide, Section 14-14-108 in bidding out contracts for these positions. The County Judge refused to allow the Board to award the contracts pending a ruling from the I.R.S. regarding the contract status of the individual who has been serving in the position of caretaker. Once the I.R.S. ruling was received, the Board selected what they believed to be the "lowest responsible bidders" for the positions. The County Judge then refused to accept the contracts, stating that the Board did not have the authority to contract. The Judge placed the decision in the hands of a budget committee during a regularly scheduled quorum court meeting. The Budget Committee was instructed to interview all of the bidders and to come back to the Judge with recommendations. The final decision would be made by the County Judge. At this time, the caretaker's contract had expired, and the maintenance contract was to expire shortly. The two individuals serving in those positions were asked by a quorum court member to stay on the job without contracts. When no decisions were made at the Budget Committee's meeting on March 4, 1999, the two individuals in the caretaker and maintenance positions refused to continue to operate the park without contracts. That afternoon, the County Judge took control of the park and hired the necessary personnel to keep the park open. He hired his administrative assistant's daughter to operate the park.
At some point during all these events, the judge called a special meeting of the quorum court, and the president of the Park Board, believing the meeting to have been called illegally, resigned his position as president of the Park Board, in protest. Although he apologized shortly thereafter, the County Judge refused to reinstate him. Later, the County Judge sent registered letters asking the remaining members of the Park Board if they were interested in remaining on the Board. At this time, the Judge also filled a previously existing vacancy on the Board, and appointed a new board member to replace the president who had resigned in protest.
The Judge has indicated his belief that the Board does not have the authority to enter into contracts, because such action would constitute "pledging the credit of the county." He has also indicated his belief that the word "operate," as used in the ordinance creating the Park Board, is vague and should be defined. He has refused to pay the attorney fees of the attorney whom the Board had hired to draft contracts for the park positions, and the Board now owes the attorney $750.00. Finally, the Judge has refused to allow any county road equipment on the park property, stating his belief that it is illegal for the county to do any work in the park. However, he has assigned a county truck to the new caretaker.
With regard to the foregoing scenario, you have presented the following questions:
 (1) Does the Park Board's act of entering into contracts constitute" pledging the credit of the county"?
 (2) Is the Park Board required to bid out "professional services," and if so, is County Compliance Guide, Section 14-22-108 the section that governs?
 (3) Can the County Judge refuse to reinstate the president of the Park Board who resigned in protest?
 (4) Does the County Judge have the authority to refuse to pay the fees of the attorney with whom the Board had contracted?
(5) Is it illegal for county equipment to be used in the county park?
RESPONSE
As an initial matter, I must note that the factual scenario you have presented and the questions arising out of that scenario are largely local in nature and will depend on a consideration of factors other than state law. To this extent, I would advise you to consult with local counsel regarding these matters. Nevertheless, to the extent that you have raised questions governed by state law, I will proceed to address your questions.
Question 1 — Does the Park Board's act of entering into contractsconstitute "pledging the credit of the county"?
The issue of the legality of any particular contractual arrangement will turn largely on the specifics of that particular arrangement. I therefore cannot answer this question in an absolute sense. Nevertheless, it is my opinion, generally, that the Park Board's act of entering into contracts does not constitute "pledging the credit of the county."
Concerns about "pledging the credit of the county" arise directly out of the language of A.C.A. § 14-14-705(2)(A), which states in pertinent part:
 (2) ADMINISTRATIVE BOARDS. (A) Administrative boards may be established to exercise administrative powers granted by county ordinance, except that the board may not be authorized to pledge the credit of the county. The administrative board shall be a body politic and corporate, with power to contract and be contracted with and sue and be sued.
A.C.A. § 14-14-705(2)(A) (emphasis added).
This statute, while prohibiting administrative boards from pledging the credit of the county, also specifically grants such boards the power to contract. This specific grant would be absurd and meaningless if the mere act of entering into a contract constituted a pledge of the county's credit. The Arkansas courts have held that in interpreting statutory language, it is inappropriate to give the statute a reading that would result in an absurdity, or to presume that the legislature enacted a vain and meaningless law. See Yarbrough v. Witty, 336 Ark. ___, ___ S.W.2d ___ (March 4, 1999); Lawhon Farm Servs. v. Brown, 335 Ark. 272, ___ S.W.2d ___ (1998); Citizens To Establish A Reform Party v. Priest,325 Ark. 257, 926 S.W.2d 432 (1996); Henson v. Fleet Mortgage Co.,319 Ark. 491, 892 S.W.2d 250 (1995);Neely v. State, 317 Ark. 312, 877 S.W.2d 589
(1994); Death and Total Permanent Disability Trust Fund v. WhirlpoolCorp., 39 Ark. App. 62, 837 S.W.2d 293 (1992).
To interpret the Park Board's act of entering into contracts as constituting a pledge of the county's credit would be to undermine the grant of contracting authority in A.C.A. § 14-14-705(2)(A). I must therefore conclude that as a general matter, the Park Board's act of entering into contracts does not constitute "pledging the credit of the county."
You note that the County Judge in the scenario you have described bases his concern about pledging the county's credit upon his more particular concern that the use of the word "operating" in the ordinance creating the park board is vague and should be clarified. The title of that ordinance is: "An Ordinance to Establish a County Administrative Board for the Purpose of Operating the Chicot County Park." The board's responsibilities are not further described in the ordinance. Presumably, the judge's concern is that by empowering the board to "operate" the county park, the quorum court illegally delegated to the board the power to pledge the credit of the county. The Attorney General is not authorized to construe local ordinances. I therefore cannot opine as to the quorum court's intent in using the word "operating." However, I am authorized to state as a matter of state law that by creating an administrative board with responsibility for a county affair, such as the county park, the quorum court acted squarely within the authority of A.C.A. § 14-14-705, and because the park board was created under that authority, it inherently has the power under state law to enter into contracts. See Op. Att'y Gen. No. 98-278. Anyone who wishes to challenge the board's authority will have the burden of establishing as a factual matter either that the quorum court intended to delegate the authority to pledge the county's credit, or that individual contracts constitute "pledging the credit of the county."
Question 2 — Is the Park Board required to bid out "professionalservices," and if so, is County Compliance Guide, Section 14-22-108 thesection that governs?
As a general matter, counties are prohibited by state law from using competitive bidding to procure "professional services." See A.C.A. §19-11-801. "Professional services," as used in that statutory prohibition, are described as including "legal, architectural, engineering, land surveying, and such other consulting services as the political subdivision shall designate by two-thirds vote of its governing body." A.C.A. § 19-11-801(c). If the "professional services" to which you refer would fall within this description, the county may not use competitive bidding to procure them.
Given the context of your question, it is possible that in referring to "professional services," you may be referring to positions such as the positions of caretaker and maintenance for the park. Although it is unclear whether positions such as these would constitute "professional services" within the meaning of A.C.A. § 19-11-801, it is my opinion that the county nevertheless need not use competitive bidding to fill them, because they constitute "personal services," which are exempt from bidding requirements under the statutes governing county purchasing procedures.
Under these purchasing requirements, counties are required to solicit bids only for purchases of "commodities." See A.C.A. § 14-22-104. The term "commodities" is explicitly defined to exclude "personal services." More specifically, the definition states: "Commodities" means all supplies, goods, material, equipment, machinery, facilities, personal property, and services other than personal services, purchased for or on behalf of the county. . . ." A.C.A. § 14-22-101(2). Although the term "personal services" is not defined in the statute, the Attorney General has consistently adhered to the view, based upon generally recognized authority, that "personal services" are those services that require special skill, experience, or business judgment. See, e.g., Ops. Att'y Gen. Nos. 94-286; 93-412; 91-308; 90-037; 90-030. I concur in this view. I must conclude that the positions of caretaker and maintenance for the park (as described in the materials attached to your correspondence) clearly are positions of "personal service," and are thus exempt from the bidding procedures set forth in state law. (Accordingly, it is unnecessary for me to address the applicability of County Compliance Guide, Section 14-22-108.)
Question 3 — Can the County Judge refuse to reinstate the president ofthe Park Board who resigned in protest?
It is my opinion that the question of whether the County Judge can refuse to reinstate the president of the Park Board who resigned in protest will depend upon whether the resignation was withdrawn prior to its acceptance. The Arkansas Supreme Court has held that in the absence of a statute to the contrary, a public officer's resignation may be withdrawn at any time prior to acceptance. See Hopper v. Garner, 328 Ark. 516,944 S.W.2d 540 (1997); Rider v. City of Batesville, 220 Ark. 31,245 S.W.2d 822 (1952). See also Ops. Att'y Gen. Nos. 96-328; 91-014.
State law does not address the question of who has the authority to accept a park board member's resignation. I find it reasonable to conclude that because the County Judge has the authority to appoint members of administrative boards created under A.C.A. § 14-14-705, he or she has the concomitant authority to accept the resignation of those members.
In any event, the questions of whether the resignation was withdrawn and whether it was accepted or was withdrawn prior to acceptance are all questions of fact that I cannot determine. The County Judge's authority to reinstate the member who resigned will turn on the answers to those factual questions. Only if the member failed to withdraw his resignation prior to its acceptance can the County Judge refuse to reinstate him.
Question 4 — Does the County Judge have the authority to refuse to paythe fees of the attorney with whom the Board had contracted?
The answer to this question will ultimately depend upon the specific facts of the situation. As a general matter, it is my opinion that the County Judge does not have the authority to refuse to pay the fees of the attorney with whom the Board had legally contracted, in the absence of facts indicating a legal justification for such refusal.
As noted in Attorney General Opinion No. 98-278, an administrative board that is created to conduct certain county affairs is explicitly authorized by A.C.A. § 14-14-705 to enter into contracts. The County Judge is not given authority to veto such contractual arrangements, and therefore has no general authority to prevent them.
Nevertheless, I reiterate that the specific facts of the situation will ultimately determine whether the County Judge can legitimately refuse to pay these fees. Among the factors that must be considered are such matters as the manner in which the park board's funds are handled and budgeted, the source from which payment is requested, whether there are defenses to payment under the terms of the contract, and the legality of the contract itself. Because such matters as these are factual considerations, and therefore outside the purview of the Attorney General, I cannot render a conclusive opinion as to whether, in all situations, the judge's refusal to pay would be appropriate or inappropriate. Local counsel should be consulted regarding these matters.
Question 5 — Is it illegal for county equipment to be used in the countypark?
It is my opinion that it is not illegal for county equipment to be used in the county park. County property is precisely where it is appropriate for county equipment to be used. The equipment must, of course, be used for county purposes in order to avoid the possibility of committing an illegal exaction. See Ark. Const., Art. 16, § 13. Assuming that the county equipment is being used in the county park for county purposes, such use gives rise to no legal concerns.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:SBA/cyh