Howard W. Brill, Chief Justice, dissenting. I concur with the majority’s conclusion that the circuit court did not abuse its discretion in admitting the Facebook screenshots. However, I respectfully dissent from the majority’s decision to reverse the circuit court’s order and remand for further proceedings. I would affirm the circuit court’s order denying Temika’s petition to terminate guardianship. In my view, because Temika had been deemed unfit, the circuit court did not err in placing the burden of proof on her to establish the grounds for termination of a guardianship under Arkansas Code Annotated section 28 — 65—401(b)(3) (Repl. 2012). The circuit court found Temika unfit on May 1, 2012. Having conducted a de novo review of the record, I find that Temika remained unfit at the time the permanent-guardianship order was entered in June 2012. First, Temika admitted at the termination hearing that she continued her relationship with Beasley until October 2012. That relationship formed the basis for the finding at the temporary hearing that Temika was unfit. Because that relationship continued, the unfitness continued. |1sSecond, the language in the permanent order of June 2012 itself indicates she was not a fit parent. The permanent order imposed a number of requirements on Temika, demonstrating that her parenting ability remained inadequate. For example, the court ordered Temika to continue therapy and parenting classes until released by the therapist and to seek family therapy with M.B. Third, the permanent order stated that M.B. needed a guardian to protect her health and welfare. There could be no other reason for this finding except for Temika’s failure to protect her daughter, which a fit parent would be able to do. Because she was an unfit parent when the permanent order was entered, she was not entitled to the Troxel fit-parent presumption [1] when she filed the petition to terminate the guardianship in 2014. At no point between the May 2012 hearing and the August 2014 order did the circuit court ever find that Temika was a fit parent. Although the exact word “unfit” was not in the permanent order, the logical reading of that order, entered only two months after the temporary order, was that she continued to be unfit. In addition, although I agree with the majority about the legal standard to be applied to the termination of a guardianship, my reading of the circuit court’s order leads me to the conclusion that the circuit court properly applied that standard for guardianship termination. Once established, a guardianship may be terminated by court order after such notice as the court may require if the guardianship is no longer necessary or for the best interest of the child. |1fi»See Ark.Code Ann. § 28-65-401(b)(3) (emphasis added). The requirements listed in the statute are disjunctive, or alternative, rather than conjunctive. See In re W.L., 2015 Ark. 289, at 8, 467 S.W.3d 129, 134 (“[Gjiven that the legislature has created a disjunctive test, the parent can move to terminate under either prong.”). Here, the circuit court found that “the guardianship for [M.B.] is still necessary, and it is not in her best interests that the guardianship be terminated at this time.” (Emphasis added.) In my view, the circuit court’s use of “and” does not mean that the circuit court applied the test conjunc-tively and required Temika to satisfy both prongs of the statute. Rather, the circuit court found that Temika satisfied neither the “no longer necessary prong” nor the “best interest” prong. Finally, it is important to note that the statute uses the verb “may.” The circuit court, having heard the testimony of the sisters in this case and having considered the other evidence, retains the discretion to continue the guardianship. See, e.g., Hopper v. Garner, 328 Ark. 516, 944 S.W.2d 540 (1997) (explaining that the use of the word “may” instead of “shall” indicates that the statute is permissive or discretionary rather than mandatory). For these reasons, I-would affirm the circuit court’s decision. Danielson and Wood, JJ,, join.