Nakia DAVIS *v.* STATE of Arkansas

CR 94-1376 896 S.W.2d 438

Supreme Court of Arkansas
Opinion delivered April 10, 1995
[Rehearing denied May 15, 1995.]

*William M. Howard, Jr.*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Clint Miller*, Acting Deputy Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. This is an appeal from a judgment of conviction for capital murder under Ark. Code Ann. § 5-10-101(a)(1) (Supp. 1993). The penalty assessed was life imprisonment without the possibility of parole. Appellant Nakia Davis questions the trial court's decision denying his motion for a directed verdict following the State's case, which motion he premised on the insufficiency of the evidence for the underlying felony of aggravated robbery. We affirm the judgment of conviction.

In her opening statement at trial, the prosecutor set out her

theory of the case which was that Nakia Davis and an accomplice, Romondo Jenkins, shot and killed the victim, Anthony Williams, in the course of robbing him. The State's case revealed the following facts. On August 3, 1993, Anthony Williams received a small insurance settlement, approximately $2,000.00, as a result of an automobile accident. His fiance, Shawna Davis, testified that they paid utility bills and purchased a few items with part of the settlement money but intended to spend the bulk of the money on a new car, which they were to pick up on Friday, August 6, 1993. She testified that on Thursday night, August 5, 1993, Williams counted the remaining money, approximately $1,500.00, and placed it in the back of his checkbook. On Friday morning, Williams left the house to purchase several items he needed for the new car.

Patty McVay, a communications specialist with the Pine Bluff Police Department, testified that she received a 911 call at approximately noon on Friday, August 6, 1993. The caller stated that a brown car had run into a ditch and hit a fence, that a blue convertible had pulled up beside it, and that there was fighting inside the brown car. The caller also stated that someone was shooting at a person inside the brown car and that the person in the brown car appeared to be dead. He stated that there were five or six males in the blue convertible.

Stanley Lovett, Nakia Davis's cousin, was originally arrested in connection with the shooting. He testified that he and several friends, including Davis, had been riding around in a blue convertible. He stated that they drove over to a friend's house where they stayed for awhile. Lovett and two friends left without Davis, and when they returned, they saw a brown car stuck in a ditch with its tires spinning. He said he then got out of the blue convertible and walked over to the car in the ditch. He testified that he saw Davis walk down the driveway towards the brown car with a gun in his hand and fire three or four times into the back window of the car. The shots sounded as if they came either from a .22 or a .25 caliber pistol. He heard the victim in the car say, "Don't shoot me no more. Don't shoot me no more." As Lovett got closer to the car, the door opened and Romondo Jenkins emerged from the car. Jenkins had blood on his hands and clothes. Davis and Jenkins walked quickly away toward the house, and Lovett returned to the blue convertible where his cousin, Carlos

Urquhart, was waiting. The two drove the convertible around the block and picked up Davis and Jenkins in the alley behind the house. Lovett stated that he saw the victim, Anthony Williams, fall out of the car onto the ground, as they were driving away. After picking up Davis and Jenkins, they drove to a friend's house. Lovett stated that he never saw Williams with a pistol.

Anthony Smothers, a correctional officer with the State Diagnostic Unit, happened to be passing by the scene shortly after the shooting. He testified that he saw a car in a ditch and stopped to render assistance. He stated that as he was nearing the car, Williams opened the passenger door and fell out onto the street. Smothers said that he stayed with Williams until the Pine Bluff police arrived on the scene. He stated that he did not see any weapons at the crime scene.

Detective Rowland Dorman of the Pine Bluff Police Department was the officer in charge of the investigation. He testified that he was unable to locate any weapons at the crime scene. He did locate several bullet casings in the area and a checkbook. The bullet casings consisted of three .25 caliber shell casings and one .380 caliber shell casing. The checkbook contained unused checks and $397. Detective Dorman added that gun powder residue was found on the hands of Romondo Jenkins.

Ronald Andrejack, a firearms examiner for the Arkansas State Crime Laboratory, testified that the three .25 caliber shells were discharged from the same gun. He also testified that the bullet removed from Williams's abdomen was consistent with the .38 caliber class. Dr. Frank Peretti, Associate State Medical Examiner, next testified that Williams died from multiple gun shot wounds. He stated that Williams had been shot three times in his legs and that the wounds were consistent with wounds caused by .25 caliber bullets. Dr. Peretti added that it was the shot to the abdomen that was fatal.

No pistols were recovered at the crime scene. At the end of the State's case, Davis moved for a directed verdict on the basis that the State failed to show any evidence of the underlying felony of aggravated robbery. The motion was denied.

Davis then testified on his own behalf. He admitted shooting into the brown car, but he testified that he did so only in self-

defense. He stated that he was walking down the street when he heard a noise that sounded like a gunshot. He pulled his gun, and after seeing a brown car in the ditch, he placed the gun back in his waistband and walked towards the car. When he reached the car, he saw Romondo Jenkins and Anthony Williams wrestling inside the vehicle. He told Williams to "get up off my home boy." At that point, Williams pointed a gun at Davis, and Davis shot him three times in the legs. He stated that he did not shoot Williams in the stomach and was out on the street when that occurred. He further denied seeing or participating in a robbery of Williams. No motion for directed verdict was made by Davis at the close of all of the evidence. The jury returned a verdict of guilty on the charge of capital murder, and Davis was sentenced to life in prison without parole.

Davis's sole point on appeal is that there was insufficient evidence to support the underlying felony of aggravated robbery. Davis, however, did not preserve this point for our review.

■ ■ Rule 36.21(b) of the Arkansas Rules of Criminal Procedure provides:

> When there has been a trial by jury, the failure of a defendant to move for a directed verdict at the conclusion of the evidence presented by the prosecution *and at the close of the case* because of insufficiency of the evidence will constitute a waiver of any question pertaining to the sufficiency of the evidence to support the jury verdict. (Emphasis ours.)

*See also Penn* v. *State,* 319 Ark. 739, 894 S.W.2d 597 (1995); *Brooks* v. *State,* 308 Ark. 660, 827 S.W.2d 119 (1992); *Ferrell* v. *State,* 305 Ark. 511, 810 S.W.2d 29 (1991). The fact that Davis made a specific motion at the close of the State's case in chief is of no consequence because by presenting evidence in his defense, he waived his former motion for a directed verdict. *See Crawford* v. *State,* 309 Ark. 54, 827 S.W.2d 134 (1992); *Rudd* v. *State,* 308 Ark. 401, 825 S.W.2d 565 (1992), *citing* LaFave and Israel, *3 Criminal Procedure,* § 23.6(a) (1984). It was, therefore, incumbent upon Davis to move for a directed verdict at the close of the case in order to give the trial court an opportunity to consider the motion in light of the total proof presented. Davis failed to do this, and the issue of the sufficiency of the evidence presented was waived under Rule 36.21(b).

The record of this case has been reviewed in accordance with Supreme Court Rule 4-3(h) for rulings adverse to the appellant, and no reversible error has been found.

Affirmed.

DUDLEY, J., not participating.