Brodrick Resean JONES *v.* STATE of Arkansas

CR 98-309 984 S.W.2d 432

Supreme Court of Arkansas
Opinion delivered January 28, 1999

*Jeff Rosenzweig*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kelly K. Hill*, Deputy Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. The appellant, Brodrick Resean Jones, was convicted of capital murder and criminal attempt to commit aggravated robbery and sentenced to life in prison without parole. He appeals his judgment of conviction on five grounds. We affirm.

On the evening of February 11, 1996, Jones and his friend, Darrell Haire, went out to "do some drinking and riding" in Little Rock. They stopped at a Stax Store in southwest Little Rock for gasoline and a bag of chips and at two other gasoline stations, including a Texaco station, ostensibly to buy beer. Next, they drove east on Cantrell Road and saw the car of a friend, Moses Waiters, parked at the Subway sandwich shop. Jones testified that he asked Haire to stop at Subway so he could buy some marijuana from Waiters. Waiters was not working at Subway, but his girlfriend, Letetia Rummel, was. At Jones's request, Rummel called Waiters, and Jones spoke with him about doing an "inside job" where the participants would steal money from Subway. Waiters testified that he told Jones not to commit the theft because it was not worth it. At some point, Haire joined Jones and Rummel inside the Subway establishment and put his gun to Rummel's head. The last thing that Waiters heard on the phone was Rummel telling him: "There's a guy standing here. He has a gun to my head." Haire, according to Jones, shot her, and she died from a contact gunshot wound to the head. Jones testified to witnessing the shooting but insisted that he had no plans to rob the Subway and that he did not have any idea that Haire would kill Rummel.

Jones and Haire left together, and Jones spent the night at the home of his ex-wife, Cynthia Polk. The next day he turned him-

self in when he heard that Little Rock police officers were looking for him. He stood trial in August, 1997, and was convicted of capital felony murder and criminal attempt to commit aggravated robbery. He was sentenced to life imprisonment without parole for the murder and fifty years for the aggravated robbery attempt, to be served concurrently.[1]

## I. Sufficiency of Evidence

Jones argues that there was insufficient evidence to convict him for criminal attempt to commit aggravated robbery and because that is an essential element of the capital felony murder charge, his conviction must be reversed. For his second sufficiency point, he claims that the evidence was insufficient to prove that he aided or abetted in the commission of the homicidal act.

■ ■ Double jeopardy considerations require this court to consider a challenge to the sufficiency of the evidence before other points are raised. See Conner v. State, 334 Ark. 457, 982 S.W.2d 655 (1998); Britt v. State, 334 Ark. 142, 974 S.W.2d 436 (1998). When a defendant makes a challenge to the sufficiency of the evidence on appeal, we view the evidence in the light most favorable to the State. See Bell v. State, 334 Ark. 285, 973 S.W.2d 806 (1998); Bailey v. State, 334 Ark. 43, 972 S.W.2d 239 (1998). Evidence, whether direct or circumstantial, is sufficient to support a conviction if it is forceful enough to compel reasonable minds to reach a conclusion one way or the other. See Wilson v. State, 332 Ark. 7, 962 S.W.2d 805 (1998). On appeal, this court does not weigh the evidence presented at trial, as that is a matter for the fact-finder; nor do we assess the credibility of the witnesses. See id.

A person commits robbery if "with the purpose of committing a felony or misdemeanor theft or resisting apprehension immediately thereafter, he employs or threatens to immediately

---

[1] Jones does not raise the issue on appeal of whether a separate sentence for the underlying felony was appropriate. See Dixon v. State, 319 Ark. 347, 891 S.W.2d 59 (1995). Nor was it raised before the trial court, based on the record.

employ physical force upon another." Ark. Code Ann. § 5-12-102 (Repl. 1997). For aggravated robbery, a person must be: (1) armed with a deadly weapon or represent by word or conduct that he is so armed; or (2) inflict or attempt to inflict death or serious physical injury upon another person. *See* Ark. Code Ann. § 5-12-103 (Repl. 1997). To be guilty of an attempted felony, a person must (1) purposefully engage in conduct that would constitute an offense if the attendant circumstances were as he believes them to be; or (2) purposefully engage in conduct that constitutes a substantial step in a course of conduct intended to culminate in the commission of an offense, whether or not the attendant circumstances are as he believes them to be. *See* Ark. Code Ann. 5-3-201 (Repl. 1997). A person's conduct is not a substantial step unless it is strongly corroborative of the person's criminal purpose. *See id.*

Viewing the evidence in the light most favorable to the State, there was sufficient evidence to convict Jones of the underlying felony of attempted aggravated robbery. First, there is evidence that Jones and Haire surveilled several places to rob before finally settling on the Subway shop. Janice Johnson, the clerk at the Texaco station, testified that Jones came into her station about 10:40 p.m. on February 11, 1996, and asked for beer. She explained that she could not sell beer to him because it was Sunday. She became nervous because Jones had his hands in his pockets and was moving his hands and looking around and acting like he was in a hurry. She went to the back of the station and pretended that her manager was there. When she returned, she told Jones that the manager refused to sell him beer and added, "You're not going to get out of here. There's cameras everywhere." When Haire came into the store, Johnson testified that Jones told him, "There's nothing here for us. Let's go." The two whispered to each other and left.

There is also Jones's own testimony to the investigating Little Rock police detective, Keith Nicholas, and to Moses Waiters. According to both men, Jones asked Waiters about an "inside job" at Subway. Waiters testified that he told him not to try anything, to which Jones responded, "We're not going to hurt her. We just want the money." The plural "we" more than indicates that Jones

was working with Haire and that he intended to commit robbery. Jones also told Waiters that he had already driven around the Subway outlet and there were not any police officers in sight. Waiters then heard a struggle over the telephone after which Letetia Rummel said another guy was holding a gun to her head. The victim was shot point-blank in the head. There was also the testimony of Cynthia Polk that Jones attempted to disguise himself the day after the crime and that he had told her Haire had just shot someone.

█ We conclude that there was sufficient evidence that Jones intended to rob the Subway shop and that Rummel was killed in furtherance of that plan. We further conclude that the prosecution did not have to prove that Jones aided in the murder itself for a felony-murder conviction. That he did not participate in the murder was an affirmative defense that Jones could and did raise under Ark. Code Ann. § 5-10-101(b) (Repl. 1997). We discuss this point under the next issue.

## II. Shifting Burden of Proof

Jones first urges this court to reconsider its prior cases and hold that Ark. Code Ann. § 5-10-101(b) (Repl. 1997), is violative of the Due Process Clause because it shifts the State's burden of proving every element of the offense beyond a reasonable doubt to the defendant. Section 5-10-101(b) provides:

> It is an affirmative defense to any prosecution under subdivision (a)(1) of this section for an offense in which the defendant was not the only participant that the defendant did not commit the homicidal act or in any way solicit, command, induce, procure, counsel, or aid in its commission.

Section 5-10-101(a)(1) is the capital felony murder statute, and it provides for liability where a defendant, acting with another, commits or attempts to commit robbery, and in the course of and in furtherance of that felony, he or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life.

██ In *Moss v. State*, 280 Ark. 27, 655 S.W.2d 375 (1983), *cert. denied*, 465 U.S. 1105 (1984), this court was presented with this precise issue of shifting the burden of proof. We held

that the Due Process Clause requires the prosecution to prove beyond a reasonable doubt all the elements of the offense charged but that it does not require the prosecution to prove the nonexistence of all affirmative defenses. In holding as we did, we emphasized that none of the elements of the § 5-10-101(b) affirmative defense, that is, that the defendant was not the only participant in the murder, did not commit the homicidal act, and did not in any way solicit, command, induce, procure, counsel, or aid in the homicide, were elements of the crime of capital felony murder. We further emphasized that the defendant did not have to prove the affirmative defense under § 5-10-101(b) until the prosecution had met its burden of proof on the charged offense. This court reiterated this holding in *Fairchild v. State*, 284 Ark. 289, 681 S.W.2d 380 (1984).

Jones contends that this court should now reconsider the issue and overrule the *Fairchild* and *Moss* decisions in light of two United States Supreme Court cases. *See Francis v. Franklin*, 471 U.S. 307 (1985); *Sandstrom v. Montana*, 442 U.S. 510 (1979). In *Sandstrom*, the Court framed the issue to be whether in a case where intent is an element of the crime charged, the jury instruction that the law presumes a person to intend the ordinary consequences of his voluntary acts violated the Fourteenth Amendment's requirement that the prosecution prove every element of a criminal offense beyond a reasonable doubt. The defendant in *Sandstrom* was charged with an intentional homicide in that he "purposefully or knowingly" caused the victim's death. The Court held that this presumption that a person intends the ordinary consequences of his actions conflicted with the overriding presumption of innocence conferred on an accused. The Court's reasoning was that upon a finding of proof of one element of the crime (causing death) and of facts insufficient to establish the second element (the voluntariness and ordinary consequences of the defendant's actions), the jury could have reasonably concluded that it was directed to find against the defendant on the element of intent. Thus, because of the presumption that one intends the natural consequences of his actions, the prosecution was not required to prove every element of the crime beyond a reasonable doubt.

The situation in the instant case is categorically different. Capital felony murder does not require deliberate or purposeful intent as an element of the offense. Moreover, in the instant case, we are not faced with a presumption that shifts the burden of proving the elements of the charged offense to the defendant. Instead, *after* the State proves all the elements of the charged offense of capital felony murder beyond a reasonable doubt, the defendant may prove as an affirmative defense under § 5-10-101(b) that he was not the trigger man or that he did not in any way assist in the murder.

The second case relied upon by Jones is *Francis v. Franklin, supra*. The defendant in *Francis* was charged with deliberate murder, not felony murder. The Court instructed the jury that, "[t]he acts of a person of sound mind and discretion are presumed to be the product of the person's will, but the presumption may be rebutted. A person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts but the presumption may be rebutted." *Francis*, 471 U.S. at 311. The Court held that this instruction created a mandatory presumption because its language was in the nature of a command. The Court concluded that this part of the jury instruction directed the jury to presume an essential element of the offense, the intent to kill, and that this presumption in effect shifted the burden of proof and deprived the defendant of due process. In short, the issue in *Francis* was precisely the issue in *Sandstrom*. Again, intent is not an element of capital felony murder in the case at bar.

The appellant also contends that our decision in *Moss v. State, supra*, misconstrued the Supreme Court's holding in *Patterson v. New York*, 432 U.S. 197 (1977) (clarifying its earlier decision of *Mullaney v. Wilbur*, 421 U.S. 684 (1975)). We disagree. In *Patterson*, the issue was an affirmative defense to murder allowing the defendant to show he "acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse." *Patterson, supra*, at 198. In *Moss*, we noted the similarity between this affirmative defense and the one at issue in the case at bar. Contrary to Jones's assertion, we see nothing in our *Moss* opinion that misconstrues either *Patterson* or *Mullraney*.

To summarize, our statute and caselaw are clear that it is not necessary for a conviction for capital felony murder for the prosecution to show that Jones took an active part in the killing so long as he participated in the robbery. *See* Ark. Code Ann. § 5-10-101(a)(1) (Repl. 1997); *Dixon v. State*, 319 Ark. 347, 891 S.W.2d 59 (1995). But his participation in the murder is simply not an element of capital felony murder. It fell to Jones to prove, as an affirmative defense, that he was not the trigger man or did not in any way aid in the murder. *See* Ark. Code Ann. § 5-10-101(b) (Repl. 1997). The jury was so instructed, but Jones obviously failed to convince the jury of his affirmative defense.

Jones's real grievance appears to be with the concept of felony murder where intent or action to commit murder is not required on the part of an accomplice so long as that accomplice participated in the underlying felony. We decline the invitation to overrule our prior cases and hold that the issue raised is without merit.

### III. Accomplice Liability

Jones next contends that the trial court erred in refusing to give three proffered jury instructions regarding accomplice liability. The trial court instructed the jury on accomplice liability using model instruction AMCI2d 401:

> In this case, the State does not contend that Brodrick Jones acted alone in the commission of the offense of capital murder and attempted aggravated robbery. A person is criminally responsible for the conduct of another person when he is an accomplice in the commission of an offense.
>
> An accomplice is one who directly participates in the commission of an offense or who, with the purpose of promoting or facilitating the commission of an offense:
>
> Solicits, advises, encourages or coerces the other person to commit the offense; or
>
> Aids, agrees to aid or attempts to aid the other person in planning or [committing the offense.][2]

---

[2] The bracketed phrase was omitted from the record, apparently in error.

> A person acts with "purpose" with respect to his conduct or a result thereof when it is his conscious object to engage in conduct of that nature or to cause such a result.

This instruction has its genesis in Ark. Code Ann. § 5-2-403(a) (Repl. 1997).

### a. AMCI2d 401

Jones first offered the following instruction, which is based on Ark. Code Ann. § 5-2-403(b) (Repl. 1997), as opposed to § 5-2-403(a):

> In this case, the State does not contend that Brodrick Jones acted alone in the commission of the offense of Capital Murder and Criminal Attempt to Commit Aggravated robbery. A person is criminally responsible for the conduct of another person when he is an accomplice in the commission of an offense. An accomplice is one who directly participates in the commission of an offense or, when causing a particular result is an element of an offense, *acting with respect to that result with the kind of culpability sufficient for the commission of that offense,* he:
>
> (1) Solicits, advises, encourages, or coerces the other person to engage in that conduct causing the result; or
>
> (2) Aids, agrees to aid or attempts to aid the other person in planning or engaging in the conduct causing the result. (Emphasis added.)

■ ■ Jones argues that the issue was whether Haire and he acted together to cause the murder of Letetia Rummel and that the trial court should have modified the model jury instruction to state that he, as the accomplice, must have had a sufficient culpable mental state to commit the murder. Our caselaw is clear that a party is entitled to a jury instruction when it is a correct statement of the law and when there is some basis in the evidence to support giving the instruction. *See Coca-Cola Bottling Co. v. Priddy*, 328 Ark. 666, 945 S.W.2d 355 (1997). This court has held that a trial court is required to give a jury instruction if there is some evidence to support it. *See Hopper v. Garner*, 328 Ark. 516, 944 S.W.2d 540 (1997). A trial court should not use a non-model instruction unless it finds that the model instruction does not

accurately reflect the law. *See Smith v. State*, 334 Ark. 190, 974 S.W.2d 427 (1998).

█ The State correctly points out that a § 5-2-403(b) modification would have inaccurately implied that Jones was required to act and possess the intent to murder Letetia Rummel in order to be found guilty of capital felony murder. In *Brown v. State*, 325 Ark. 504, 929 S.W.2d 146 (1996), we underscored the point that it is settled law that felony murder simply requires that a death be caused in the course of committing a felony such as rape, kidnapping, or robbery. Under the capital felony murder statute, it is simply not necessary for the State to show that the defendant took an active part in the killing itself so long as he assisted in the commission of the underlying crime — in this case, aggravated robbery. *See Dixon v. State*, 319 Ark. 347, 891 S.W.2d 59 (1995); *Sellers v. State*, 300 Ark. 280, 778 S.W.2d 603 (1989). Again, in felony murder, a defendant need only have the requisite intent to commit the underlying felony, not the murder. *See Dixon v. State, supra.*

█ Accordingly, a reasonable interpretation is that § 5-2-403(a) applies in the felony–murder context when an accomplice has the *purpose* of promoting or facilitating the underlying felony (here, aggravated robbery) that results in death, whereas § 5-2-403(b) applies when the issue is whether the accomplice intended the results of his actions with criminal culpability, that is, intended the death itself. The trial court could well have determined that instructing the jury on § 5-2-403(b) would have confused the jurors and misled them into believing that Jones needed to act purposefully to cause the murder in order to be guilty of capital felony murder as an accomplice. That is not the law because the State needed only to prove that Jones acted purposefully in the attempted aggravated robbery in order to be guilty of capital felony murder for the resulting death. We hold that there was no abuse of discretion by the trial court in denying Jones's requested modification of AMCI2d 401.

### b. Section 5-2-406

█ The proffered § 5-2-406 instruction reads:

When two (2) or more persons are criminally liable for an offense of which there are different degrees, each person shall be liable only for the degree of the offense that is consistent with his own mental culpability or with his own accountability for an aggravating fact or circumstance.

This court has previously held that although the proffered instruction is a correct statement of the law, it is not a model jury instruction and, further, that it is unnecessary to give it when its substance is covered by other instructions. *See Ventress v. State*, 303 Ark. 194, 794 S.W.2d 619 (1990) (citing *Wallace v. State*, 270 Ark. 17, 603 S.W.2d 399 (1980)); *Henderson v. State*, 284 Ark. 493, 684 S.W.2d 231 (1985).

■ We do not view the proffered instruction as being relevant to this case. Section 5-2-406 addresses the situation where two or more defendants are charged and tried together and where the degree of each defendant's culpability may differ. *See, e.g., Blann v. State*, 15 Ark. App. 364, 695 S.W.2d 382 (1985) (no error in finding one codefendant guilty of being an accomplice to a lesser included offense while holding another guilty of the greater offense). Haire and Jones were not tried together and so far as we know the liability of Haire has not been decided.

c. *Mere Presence Instruction*

■ The proffered "mere presence" instruction reads:

Mere presence, acquiescence, silence or knowledge that a crime is being committed, in the absence of a legal duty to act, is not sufficient to make one an accomplice.

This instruction was not a model instruction at the time of the trial although a similar instruction was apparently adopted by this court's Criminal Instruction Committee and sent to the Michie Publishing Company in August 1997, just after the trial but the same month of the trial.[3] This court has held in the past that a trial court committed no error in refusing to instruct the jury with

---

[3] After reviewing the proofs of the instruction changes sent by Michie Publishing Company, the Committee finally approved the "mere presence" instruction on September 18, 1997.

the "mere presence" language. *See Calloway v. State*, 330 Ark. 143, 953 S.W.2d 571 (1997); *Williams v. State*, 329 Ark. 8, 946 S.W.2d 678 (1997); *Webb v. State*, 326 Ark. 878, 935 S.W.2d 250 (1996). We observed in those cases that it is implicit in the accomplice liability instruction, which states that a party must solicit, advise, encourage, coerce, aid, agree to aid, or attempt to aid the principal to commit the crime, that mere presence or acquiescence at the crime scene is not enough. Accordingly, even though the Criminal Instruction Committee has now adopted a "mere presence" instruction, our caselaw is clear that refusal to instruct on mere presence is not reversible error.

There was no abuse of discretion in the refusal to give any of these jury instructions.

### IV. Impeachment of Biased Witness

Jones next claims that the trial court erred in not allowing him to impeach state witness Cynthia Polk with evidence that the prosecution had filed drug charges against her, and that they were pending. According to Jones, this could have shown that she was biased. Polk was Jones's ex-wife, whom he stayed with the night of the murder. She testified on direct examination by the defense after being recalled that Jones told her Haire had shot someone and that Jones seemed scared when he came over. She further stated that Jones had used one of her hair pieces and a hat the following day when they went out to buy marijuana. The State elicited testimony during its cross-examination that Jones was scared but not crying. Polk further testified that she concluded he was not remorseful because he was not crying. There was no disagreement between the parties that there were pending charges against Polk set for trial a few weeks later.

Arkansas Rule of Evidence 607 provides that the credibility of a witness may be attacked by any party, including the party calling him. And Arkansas Rule of Evidence 611 limits cross-examination to the subject matter of the direct examination and to matters of credibility. This court has stressed the importance of allowing wide latitude with respect to the admission of evidence relevant to the bias of the witness. *See Woodruff v. State*,

313 Ark. 585, 856 S.W.2d 299 (1993); *Wilson v. State*, 289 Ark. 141, 712 S.W.2d 654 (1986). By the same token, a trial court is given wide discretion in evidentiary rulings. *See Esry v. Carden*, 328 Ark. 153, 942 S.W.2d 846 (1997); *Willett v. State*, 322 Ark. 613, 911 S.W.2d 937 (1995).

Jones argues that the trial court's ruling violated his state and federal constitutional rights to confront his accusers. *See Winfrey v. State*, 293 Ark. 342, 738 S.W.2d 391 (1987). We agree that disallowing the impeaching evidence was an abuse of discretion by the trial court. However, the State counters that even if this was error, there is still overwhelming evidence of Jones's guilt and that this issue should be decided under a harmless–error analysis. We agree.

 Although some constitutional rights are so fundamental that their violation can never be deemed harmless error, *see Allen v. State*, 310 Ark. 384, 838 S.W.2d 346 (1992), others are subject to the harmless-error analysis. *See Chapman v. California*, 386 U.S. 18 (1967). To conclude that a constitutional error is harmless and does not mandate a reversal, this court must conclude beyond a reasonable doubt that the error did not contribute to the verdict. *See Schalski v. State*, 322 Ark. 63, 907 S.W.2d 693 (1995); *Allen v. State, supra*; *Vann v. State*, 309 Ark. 303, 831 S.W.2d 126 (1992). In *Winfrey v. State, supra*, we held that the erroneous denial of a defendant's opportunity to impeach a witness is subject to a *Chapman* harmless-error review.

In applying the *Chapman* analysis, we excise the unimpeached testimony of Cynthia Polk and determine whether the remaining evidence shows beyond a reasonable doubt that the error did not contribute to the verdict. *See Chapman v. California, supra*. The salient points of Polk's testimony were:

- Haire and Jones came to her home one night in February 1996 and Jones spent the night with her.

- Jones told her Haire had shot someone.

- Jones was upset but not remorseful because he was not crying after the homicide.

- The next morning Jones put on a wig and hat when he and Polk went out to get marijuana.

- Polk told Jones to turn himself in after seeing a police report on the murder, and she contacted the Little Rock Police Department about Jones.

It is the testimony about Jones's lack of emotion over the homicide that he argues is the most damaging aspect of Polk's testimony.

We first note that some points made by Polk were actually helpful to Jones, the primary one being that Haire was the trigger man. There is, too, the fact that other points made by Polk in her testimony were also testified to by police detective Keith Nicholas and by Jones himself. Thus, the testimony was cumulative to the statements by Polk. Finally, Polk's testimony about Jones being upset after the killing was first elicited by defense counsel when he recalled Polk as a witness for the defense. On cross-examination, the prosecution extracted from Polk that Jones was scared but not crying or remorseful. In short, it was the defense that first delved into the area of Jones's demeanor and, thus, opened the subject for cross-examination.

But even assuming that the error in disallowing Polk's impeachment was not cured, we conclude that the error was harmless beyond a reasonable doubt. The issue boils down to whether Polk's assessment that Jones was not remorseful because he was not crying was so pivotal that it contributed to the jury's verdict. We are hard pressed to conclude that this was the case. Accordingly, we hold that though the trial court abused its discretion in disallowing impeachment, the error was harmless and did not contribute to the verdict in light of the other evidence.

## V. Other Claims

### a. Photograph

Jones next contests the admission into evidence of a photograph depicting the deceased victim lying in a pool of blood on the floor at the Subway outlet on grounds that it was unreasonably prejudicial. This court has recited the well-settled law regarding the introduction of inflammatory or gruesome photographs:

> The mere fact that a photograph is inflammatory or is cumulative is not, standing alone, sufficient reason to exclude it. (Citation omitted.) Even the most gruesome photographs may be admissible if they assist the trier of fact in any of the following ways: by shedding light on some issue, by proving a necessary element of the case, by enabling a witness to testify more effectively, by corroborating testimony, or by enabling jurors to better understand the testimony. (Citation omitted.) Of course, if a photograph serves no valid purpose and could be used only to inflame the juror's passion, it should be excluded.

Jefferson v. State, 328 Ark. 23, 941 S.W.2d 404 (1997) (*quoting Weger v. State,* 315 Ark. 555, 869 S.W.2d 688 (1994)).

■ Other acceptable purposes warranting admissibility are to show the condition of the victims' bodies, the probable type or location of the injuries, and the positions in which the bodies were discovered. *See Camargo v. State,* 327 Ark. 631, 940 S.W.2d 464 (1997). We have further held that the nature and extent of a victim's wounds are relevant to a showing of intent, which may be inferred from the type of weapon used, the manner of use, and the nature, extent, and location of the wounds. *See Camargo v. State, supra; Kemp v. State,* 324 Ark. 178, 919 S.W.2d 943 (1996).

■ Even if photographs are inflammatory or prejudicial in the sense that they show human gore repulsive to the jurors, they are nevertheless admissible at the discretion of the trial court if they help the jury understand the accompanying testimony. *See Willett v. State,* 322 Ark. 613, 911 S.W.2d 937 (1995). It is only when an inflammatory or gruesome photograph is without any valid purpose that it should be excluded.

■ In the instant case, the State offered a close-up photograph of the victim on the floor where she died. It is difficult to evaluate the photo because the photograph in the record is a black-and-white photocopy of the original. The State offered the picture during Waiters's testimony and asked him if he recognized the person in the picture. Waiters answered that it was a picture of his fianceé. The trial court ruled that Waiters was certainly entitled to identify his girlfriend who was the victim of the crime. The State contends that the photo was properly admitted because it clearly assisted the witness and trier of fact in identification in

addition to the victim's condition and the type of wound. We agree. There was no reversible error on this point.

### b. Lesser included offense

Jones also contends that the trial court erred in refusing to instruct the jury on second-degree murder, which requires that the defendant knowingly cause the death of another. We held in *Brown v. State*, 325 Ark. 504, 929 S.W.2d 146 (1996), that second-degree murder with its element of knowingly causing a death was not a lesser included offense of felony murder. This is so, we wrote in *Brown*, because purpose or deliberation to cause the murder is not an element of felony murder. Jones now asks us to overrule the *Brown* decision. The reasoning is sound in that case, and we decline to do so.

### c. Underlying felony

Jones proffered an instruction on the underlying felony of attempted aggravated robbery which would have deleted the reference to "an accomplice." As a result, the jury would have been instructed that for a finding of guilt for attempted robbery Jones himself and not Haire had to be armed and had to have attempted to inflict harm on Letetia Rummel. That is not the law. The capital felony murder statute provides that "[a]cting alone or with one (1) or more other persons," he commits attempted robbery or some other associated felony. Ark. Code Ann. § 5-10-101(a)(1) (Repl. 1997). That language clearly contemplates acting with an accomplice. Moreover, Jones does not contend that AMCI2d 1001A, as given, was an erroneous instruction of the law but rather that the "accomplice" language was surplusage. There was no abuse of discretion by the trial court on this point.

The record has been reviewed under Ark. Sup. Ct. R. 4-3(h) for other reversible error, and none has been found.

Affirmed.

SMITH, J., not participating.