Erich Lynn DIEMER *v.* STATE of Arkansas

CR 99-638                                                    9 S.W.3d 490

Supreme Court of Arkansas
Opinion delivered January 27, 2000

*Meredith Wineland,* for appellant.

*Mark Pryor,* Att'y Gen., by: *Mac Golden,* Ass't Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. This is an appeal from a judgment of conviction where the appellant, Erich Lynn Diemer, was convicted of rape, kidnapping, and residential burglary.[1] He was sentenced to two life terms for rape and kidnapping, and 240 months for residential burglary, with the sentences to run concurrently. He raises two points on appeal: (1) the evidence supporting the convictions for rape, kidnapping, and residential burglary was insufficient; and (2) the trial court erred when it denied his motion to suppress his confession.[2] Neither point has merit, and we affirm.

At trial, the victim in this matter, J.G., testified to the following events. On May 22, 1997, she was sixteen years old and living with her mother and stepfather in a house located on Highway 298 in Saline County. That morning between eight and nine o'clock,

---

[1] He was also convicted of two misdemeanors — assault in the first degree and criminal trespass with sentences in the Saline County jail. Those convictions and sentences are not an issue in this appeal.

[2] The Point To Be Relied On in Diemer's brief refers to aggravated assault rather than residential burglary, but the argument relates to the residential burglary conviction.

she was wearing a one-piece bathing suit under sweat pants and a tee shirt in her house. She saw a car pass by and stop, and Diemer, whom she knew, walked up to her porch. J.G. went outside, and Diemer asked her to go swimming. She refused, and he persisted. When she turned to go back into the house, he pulled the back of her hair and grabbed her from behind.

Diemer forced her into his car and tried to kiss her, which she protested. He drove her to his house, took her into his bedroom, and began fondling her. She told him to stop. They got back in his car, drove by the house of one of his friends, and ultimately drove down a dirt road in the woods. Diemer forced her out of the car and took her to a clearing in the woods by the river. He pulled her over into a mud puddle, turned her on her stomach, pulled out a knife (she had seen a knife in his car), and put it to her throat. He then pulled her sweat pants down, ripped her bathing suit at the bottom, rubbed mud between her legs, and raped her anally. She screamed and tried to get away, and he threatened to cut her. He turned her over and raped her vaginally and finally ejaculated in her mouth.

When he was through, he took her to the river bank and threatened to have "some friends in a white van" take her to Cuba. He also said he would kill her if she came back or told anyone in her family what had happened. Next, he tied her hands behind her back with his shoestrings and rifled through her purse. He took her house key, money, jewelry, and a photograph of her daughter. He then choked her until she blacked out. When she came to, he said: "You're a hard bitch to kill." He choked her again, and she passed out for a second time. When she awoke, he had gone. She walked down the road to a house, freed her hands, and called her mother and 911. A deputy sheriff from the Saline County Sheriff's Department arrived at the scene, and she was taken to the hospital. According to witnesses and photographs introduced into evidence, her wrists were bleeding, she was covered in mud, and she had cuts, bruises, and scrapes on her legs.

Later that same day, J.G.'s stepfather, Bryant Kendall Riggin, came home for lunch and found the door open. Diemer was in the house and pointed one of Riggin's own pistols, a Ruger semi-automatic, at him. Diemer was acting "crazy," according to Riggin, and told Riggin he wanted to kill him. Riggin grabbed the gun,

pushed Diemer down, and forced him out of the house. He described Diemer as being barefoot, muddy, and wearing short pants.

That afternoon, Diemer was arrested by Saline County deputy sheriffs. According to Sergeant Troy White of the Sheriff's Department, Diemer told him after his arrest: "I fucked up this time, didn't I, sarge?" Diemer was interrogated by Detective Kevin Thompson. According to the detective, Diemer first signed a form waiving his *Miranda* rights and then admitted that he tried to have anal sex with J.G. and had vaginal sex with her. He also admitted, in the detective's words, that he "copulated on her mouth." He further stated that he knocked her out down by the river and tied her up with shoestrings. He also said that he tried to steal Riggin's pistols, but Riggin grabbed him and threw him out of the house.

At trial before a jury, Diemer testified that he and J.G. had consensual sex at his house after drinking alcohol and playing pool. They then went to the river and sniffed crystal methamphetamine, after which she started throwing rocks at him. He hit her and knocked her out, and when she began foaming at the mouth from what he believed to be a drug overdose, he tied her wrists with his shoelaces to keep her from running out into the road. Diemer was convicted and sentenced as previously set out in this opinion.

Diemer raises sufficiency of the evidence as his second point on appeal, but double jeopardy considerations require this court to consider sufficiency of the evidence before the other points raised. *See Jones v. State*, 336 Ark. 191, 984 S.W.2d 432 (1999); *Conner v. State*, 334 Ark. 457, 982 S.W.2d 655 (1998).

Diemer challenges the sufficiency of the State's proof relative to the rape, kidnapping, and residential burglary convictions. We do not reach the merits of this challenge, however, because we conclude that Diemer waived consideration of this issue at trial.

Rule 33.1 of the Arkansas Rules of Criminal Procedure requires that a defendant in a jury trial move for a directed verdict on insufficiency of the evidence at the conclusion of the State's case and again at the close of the case. Failure to do so constitutes a waiver of the issue. Diemer moved for a directed verdict at the end of the State's case on the counts of kidnapping and residential burglary only and then failed to make any directed-verdict motion

at the close of the case. Hence, his waiver of the issue for purposes of this review is clear and obvious. *See, e.g., King v. State*, 338 Ark. 591, 999 S.W.2d 183 (1999); *Smith v. State*, 324 Ark. 74, 918 S.W.2d 714 (1996); *Davis v. State*, 320 Ark. 329, 896 S.W.2d 438 (1995).

Diemer next contends that the trial court clearly erred in denying his motion to suppress his confession. The State argues in its brief that Diemer's abstract was deficient in that essential matters relating to this issue such as the suppression motion were omitted in contravention of Ark. Sup. Ct. R. 4-2(a)(6). We further note that the trial court's ruling on the suppression question also was not abstracted. This case, however, involves a sentence of life imprisonment, and, as a consequence, we must review all errors prejudicial to Diemer under Ark. Sup. Ct. R. 4-3(h). Under this rule, it is incumbent on the appellant to abstract all rulings adverse to him on all motions, and it is incumbent on the Attorney General to make certain and certify that this has been done and to brief all points argued by the appellant "and any other points that appear to involve prejudicial error." When the record is reviewed, it is obvious that a motion to suppress the confession was made and that a ruling by the trial court occurred. Thus, we will address the suppression issue.

The trial court ruled that Diemer made a knowing and intelligent waiver of his *Miranda* rights and, therefore, his confession was voluntary. Our law is clear that confessions made in police custody are presumed to be involuntary, and the burden is on the State to prove the confession was voluntary and that any waiver of *Miranda* rights was knowingly and intelligently made. *See Riggs v. State*, 339 Ark. 111, 3 S.W.3d 305 (1999). This proof must be by a preponderance of the evidence. *Id.* In order to determine whether a waiver of *Miranda* rights is voluntary, one must decide whether the confession was the product of free and deliberate choice rather than intimidation, coercion, or deception. *Riggs v. State, supra; Britt v. State*, 334 Ark. 142, 974 S.W.2d 436 (1998). In making this determination, we review the totality of the circumstances and reverse the trial court only if its decision was clearly erroneous. *Riggs v. State, supra; Rankin v. State*, 338 Ark. 723, 1 S.W.3d 14 (1999). This court considers the following factors in making its decision — age, education, and intelligence of the accused; the lack of advice as to his constitutional rights; the length of the detention; the repeated and prolonged nature of the questioning; the use of mental or

physical punishment; and statements made by the interrogating officers and the vulnerability of the defendant. *Rankin v. State, supra.*

■ Diemer was twenty years old when he was interrogated and had an I.Q. of 77. He was reading on a third-grade level, according to State Psychiatrist Dr. Paul DeYoung. Age and mental capacity are factors to be considered, but they alone do not suffice to warrant the suppression of a confession. *See Wright v. State,* 335 Ark. 395, 983 S.W.2d 397 (1998). In *Misskelley v. State,* 323 Ark. 449, 915 S.W.2d 702, *cert. denied,* 519 U.S. 898 (1996), for example, this court affirmed the trial court's admission of a confession when the defendant was age 17, had an I.Q. of 72, and was reading on a third-grade level.

Various law enforcement officers testified that Diemer was nervous but that he did not appear to be intoxicated at the time he confessed. Detectives Kevin Thompson and Mark Knowles testified that he received the *Miranda* warnings, signed a waiver form, and acknowledged that he understood his rights. Detective Thompson testified that Diemer was not coerced or threatened to induce a confession. Detective Knowles, who watched the interrogation on a TV monitor in the next room, confirmed that fact.

Diemer testified that the detectives told him what to say before his confession and that Detective Thompson wore his pistol during the interrogation, fidgeted with it, and laid it on the table. This was intimidating, according to Diemer. Detective Thompson testified that wearing a pistol during interrogations was normally not the office policy but that he did not recall whether he was wearing a pistol at the time. He stated that he did not know if he touched his pistol during the interrogation, but that there was no reason for him to be "fidgety." He denied telling Diemer what to say in his confession. Both Detective Thompson and Detective Knowles denied that any threats were made.

■■ The circumstances surrounding the taking of Diemer's confession are certainly in conflict, but we have said: "When testimony on the circumstances surrounding the taking of a custodial confession is conflicting, it is the trial court's province to weigh the evidence and resolve the credibility of the witnesses." *Wright,* 335 Ark. at 408, 983 S.W.2d at 403; *see also Riggs v. State, supra.* As in the *Wright* case, no other credible evidence was presented that Diemer

was coerced or threatened outside of his own testimony. The trial court heard testimony from Diemer and the police officers involved, assessed their credibility, and denied the motion to suppress. We cannot say that the trial court's denial of the motion to suppress was clearly erroneous.

The record in this case has been reviewed for other prejudicial error in accordance with Ark. Sup. Ct. R. 4-3(h), and none has been found.

Affirmed.