Damarcus JORDAN *v.* STATE of Arkansas

CR 03-915 147 S.W.3d 691

Supreme Court of Arkansas
Opinion delivered February 26, 2004

*Nolan Henry, PLLC*, by: *Mark Murphey Henry*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

D ONALD L. CORBIN, Justice. Appellant Damarcus Jordan appeals the order of the Pulaski County Circuit Court convicting him of capital murder and aggravated robbery and sentencing him to life imprisonment. On appeal, he argues that the trial court erred in refusing to grant (1) his directed-verdict motion on the charge of capital murder; (2) his motion to transfer his case to juvenile court; and (3) his motion to suppress his custodial statement. Our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(1). We find no error and affirm.

On the evening of February 11, 2001, Appellant was at the home of his friend Raymond Williams. Also present were Charles Robinson, another friend, and Williams's three sisters. The group decided to order pizza from a nearby Pizza Hut. While waiting for the pizza to be delivered Appellant, Williams, and Robinson began discussing a plan to rob the pizza deliveryman when he arrived. Specifically, they discussed that one of the three would check the delivery vehicle for cash, while another would check his pockets, and the third would hold a gun on him. At one point, Appellant and Robinson began to argue over who was going to get to hold the gun but, ultimately, it was Appellant who held it. Appellant and the other two men then left the house for a while. When they returned, they came back inside the house for a few minutes, but then went back outside to wait for the deliveryman.

Approximately one hour and forty-five minutes after they ordered the pizza, Herman Lockhart, a part-time deliveryman for Pizza Hut, arrived at the Williams's house. He went inside and dropped off the pizza. When he came back out, he was confronted by Appellant and Robinson. Appellant was pointing a gun at him when the gun discharged, striking Lockhart in the chest. Appellant, Robinson, and Williams then fled the scene.

The next morning, Williams's mother arrived at Appellant's home and informed his mother, Betty Jordan, that Appellant, Williams, and Robinson were wanted for questioning by the Little Rock Police Department. Betty and Curtis Clemons, a friend of hers, took Appellant and Robinson to the police department. Detective Steve Moore was notified that Appellant and Robinson were there, and he escorted the men to separate interview rooms.

According to Moore, Appellant was informed that he was at the police department because there was a warrant for his arrest for capital murder.

While in the interview room, Moore and another detective, Ronnie Smith, advised Appellant of his *Miranda* rights. Appellant then gave a false statement regarding the events leading up to the death of Lockhart. In that statement, Appellant admitted that he and the others devised a plan to rob Lockhart when he delivered the pizza and that they waited outside for him to arrive. Appellant then told the officers that at the last minute he backed out and hid on the side of the house, while Williams and Robinson approached Lockhart. Appellant also told officers that it was Robinson who had the gun.

Shortly after this statement, when confronted with the fact that two of Williams's sisters stated that Appellant wanted to hold the gun during the robbery, Appellant recanted his first statement. He then confessed to Moore and Smith that he was the one holding the gun during the robbery. He also admitted to shooting Lockhart, but claimed that Lockhart tried to grab the gun from him, causing it to accidentally discharge.

Appellant was charged by felony information with one count of capital murder and one count of aggravated robbery. A jury trial was held on April 29, 2003. During the trial, Annie Williams, a sister of Raymond Williams, testified that she over-heard Appellant, Williams, and Robinson come up with a plan to rob the deliveryman. She stated that she never notified anyone of this plan, because she thought the three men were just joking. According to Annie, when the deliveryman left the house, she looked out the window and saw Appellant and Robinson standing in front of Lockhart. She could not tell if either man was holding anything, but stated that Appellant's hand was pointed straight out in front of him. Annie turned away from the window and then heard a scream and a gunshot.

Stephen Ray, an analyst with the Arkansas State Crime Lab, testified that based on his analysis of the gunshot residue found on clothing worn by Lockhart at the time of the shooting, he was able to determine that Lockhart was not the victim of a close range or contact gunshot wound. According to Ray, Lockhart was not holding on to the gun at the time it was fired.

Dr. Frank Peretti was the medical examiner in this case. He testified that Lockhart died as the result of a single gunshot wound

to the chest. Peretti stated that the wound was a distance gunshot wound, because there was no evidence of close range firing on the skin.

Following the presentation of all the evidence, the jury returned a verdict of guilty on both the capital-murder charge and the aggravated-robbery charge. This appeal followed.

### I. Sufficiency of the Evidence

For his first point on appeal, Appellant argues that the trial court erred in denying his motion for a directed verdict made at the close of the State's case and renewed at the close of all the evidence. Appellant argues that there was insufficient evidence to prove that he caused Lockhart's death under circumstances manifesting an extreme indifference to the value of human life, as required by Ark. Code Ann. § 5-10-101(a)(1) (Supp. 2003). Appellant avers that the State failed to prove that the shooting was nothing more than the result of an accidental discharge of the gun. In other words, Appellant argues that the *mens rea* necessary to sustain a capital-felony-murder conviction was not present and was not proved by the State. We disagree.

 It is well settled that we treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Mills v. State*, 351 Ark. 523, 95 S.W.3d 796 (2003); *Williams v. State*, 346 Ark. 304, 57 S.W.3d 706 (2001). The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id*. Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Haynes v. State*, 346 Ark. 388, 58 S.W.3d 336 (2001). On appeal, we view the evidence in the light most favorable to the State, considering only that evidence that supports the verdict. *Williams*, 346 Ark. 304, 57 S.W.3d 706. Remaining mindful of this standard, we review the evidence in this case.

 Section 5-10-101(a)(1) provides that:

(a) A person commits capital murder if:

(1) Acting alone or with one (1) or more other persons, he … commits or attempts to commit … robbery … and in the course of and in furtherance of the felony or in immediate flight therefrom, he

or . . . an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life.

We have held that the required intent when a person is killed in the course of committing a felony, here robbery, is the intent to commit the felony and not the intent to commit murder. *Isom v. State*, 356 Ark. 156, 148 S.W.3d 257 (2004); *Jones v. State*, 336 Ark. 191, 984 S.W.2d 432 (1999). We have further held that the requirement of extreme indifference involves actions that evidence a mental state on the part of the accused to engage in some life-threatening activity against the victim. *Williams v. State*, 351 Ark. 215, 91 S.W.3d 54 (2002), *cert. denied*, 539 U.S. 907, 123 S.Ct. 2257 (2003); *McCoy v. State*, 347 Ark. 913, 69 S.W.3d 430 (2002).

Here, Annie Williams testified that she heard Appellant and the others making plans to rob Lockhart after he delivered the pizza. She testified that she heard Appellant and Robinson arguing over who was going to hold the gun, because Appellant wanted to do it. Annie also testified that immediately prior to the shooting, she looked out the kitchen window and saw Appellant and Robinson standing in front of Lockhart and that Appellant's arm was pointing straight out in front of him. In addition to Annie's testimony, Detective Smith testified that Appellant gave a statement admitting to shooting Lockhart. In that statement, Appellant claimed the gun went off after Lockhart tried to grab it. Appellant's claim that the gun accidently discharged was countered by evidence presented by the State that Lockhart's wound was not the result of a close-contact wound and was not consistent with him having grabbed for the gun. Specifically, Stephen Ray, a crime lab analyst testified that an analysis of gunshot residue revealed that Lockhart was not holding on to the gun when it discharged. The medical examiner also testified that Lockhart's wound was a distance wound, not a close-contact wound.

In sum, Appellant's claim that the evidence did not eliminate the possibility of an accidental shooting is without merit. The fact that he pointed a loaded gun at Lockhart is sufficient to satisfy the requirement that he acted under circumstances manifesting an extreme indifference to the value of human life. This court has held that the mere act of pointing a loaded gun at another person in the course of a robbery is a manifestation of extreme indifference to the value of human life. *Price v. State*, 347 Ark. 708, 66 S.W.3d 653 (2002) (citing *Isbell v. State*, 326 Ark. 17, 931

S.W.2d 74 (1996)). In *Isbell*, this court noted that the act of pointing the weapon was sufficient to constitute the requisite circumstances regardless of whether there was an actual intent to shoot. *Id*. Accordingly, the trial court did not err in failing to grant his motion for a directed verdict.

## II. Juvenile Transfer Motion

For his second point on appeal, Appellant argues that the trial court erred in denying his motion to transfer his case to the juvenile division of the circuit court. Specifically, Appellant argues that the trial court's denial was clearly erroneous because he did not consider all the factors enumerated in Ark. Code Ann. § 9-27-318(g) (Supp. 2003). We do not address the merits of Appellant's claim on this point, as the matter was previously decided by the Arkansas Court of Appeals in an unpublished opinion in *Jordan v. State*, CA 01-1203 (Ark. App. May 1, 2003). No petition for review of that opinion was ever filed with this court. Moreover, as this court pointed out in *Davis v. State*, 350 Ark. 22, 86 S.W.3d 872 (2002), an appeal from an order denying a motion to transfer to juvenile court following a conviction as an adult in circuit court is not timely and will not be considered by this court.

## III. Motion to Suppress

For his final point on appeal, Appellant argues that the trial court erred in denying his motion to suppress his custodial statement, as his waiver of his *Miranda* rights was not voluntary, knowing, or intelligent. Appellant premises this argument on the notion that he was never informed that he would be charged as an adult. At the suppression hearing, Appellant argued to the trial court that his statement should be suppressed because officers failed to comply with certain provisions of the juvenile code. He does not continue this specific argument on appeal, however, and thus it is waived. *See Echols v. State*, 344 Ark. 513, 42 S.W.3d 467 (2001) (holding that issues raised below but not argued on appeal are considered abandoned). Thus, the sole issue for this court to decide is whether there was a voluntary, knowing, and intelligent waiver of Appellant's rights.

In order to determine whether a waiver of *Miranda* rights is voluntary, knowing, and intelligent, this court looks to see if the statement was the product of free and deliberate choice

rather than intimidation, coercion, or deception. *Diemer v. State*, 340 Ark. 223, 9 S.W.3d 490 (2000). In other words, did Appellant waive his rights with "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Sanford v. State*, 331 Ark. 334, 346, 962 S.W.2d 335, 341-42 (1998) (quoting *State v. Bell*, 329 Ark. 422, 432, 948 S.W.2d 557, 562 (1997)). In order to make this determination, this court reviews the totality of the circumstances surrounding the waiver including the age, education, and intelligence of the accused; the lack of advice as to his constitutional rights; the length of the detention; the repeated and prolonged nature of the questioning; the use of mental or physical punishment; and statements made by the interrogating officers and the vulnerability of the defendant. *Diemer*, 340 Ark. 223, 9 S.W.3d 490. This court will reverse a trial court's ruling on this issue only if it is clearly against the preponderance of the evidence. *Grillot v. State*, 353 Ark. 294, 107 S.W.3d 136 (2003).

We now turn to a review of the totality of the circumstances surrounding Appellant's custodial statement. Appellant voluntarily arrived at the police station. He was patted down and taken to an interview room. Two officers, Detectives Moore and Smith conducted the interview of Appellant. According to both officers, there was no evidence that Appellant was under the influence of any narcotics or alcohol, and he appeared to understand what they were saying to him. Appellant told the detectives that he had completed the ninth grade and could read and write. Prior to asking any questions, Detective Smith verbally advised Appellant of his *Miranda* rights, as well as advised him that he was a suspect in a capital murder. Appellant signed the rights form stating that he understood his rights. He was advised of his rights at 10:35 a.m. His initial statement began at 10:39 a.m. and lasted until 11:00 a.m. Both Moore and Smith denied that they promised Appellant anything in exchange for his statement, or that they threatened or coerced him into making a statement. Because Appellant provided conflicting information about the identity of the shooter, Moore and Smith continued talking with Appellant after the conclusion of his first statement. Then, at 11:32 a.m., Appellant gave a second statement indicating that he, in fact, was the shooter. Prior to this second statement, Smith again went over with Appellant his *Miranda* rights and the fact that he was a suspect in a capital murder. A review of the circumstances surrounding

Appellant's waiver of his *Miranda* rights indicates that his waiver was made voluntarily, knowingly, and intelligently.

Before leaving this issue, we note that Appellant cites to the case of *Ring v. State*, 320 Ark. 128, 894 S.W.2d 944 (1995), for the proposition that a juvenile is especially vulnerable to interrogation and procedures. He makes no specific argument, however, as to how he was especially vulnerable in this situation, other than the fact that he was sixteen years of age at the time that he gave the statement. This court has previously rejected similar arguments.

In *Boyd v. State*, 313 Ark. 171, 853 S.W.2d 263 (1993), the appellant was seventeen at the time that he was questioned by police regarding his involvement in the burglary of a pawn shop. His sole argument on appeal was that the trial court should have suppressed his custodial statement because the extra safeguards embodied in Ark. Code Ann. § 9-27-317 (Repl. 2002) were not applied to him before he waived his *Miranda* rights. This court rejected his argument, noting that the safeguards of section 9-27-317 do not apply when a juvenile is charged as an adult. The court further stated that "when the prosecutor chooses to prosecute a juvenile in circuit court as an adult, the juvenile becomes subject to the procedures and penalties prescribed for adults." *Id.* at 172-73, 853 S.W.2d at 264. This notion was reaffirmed in *Sanford*, 331 Ark. 334, 962 S.W.2d 335, where this court held that the age of a defendant alone is not sufficient to render a waiver unintelligent or unknowing. Accordingly, we cannot say that the trial court erred in refusing to suppress Appellant's statement on this basis.

### IV. Rule 4-3(h) Review

The record has been reviewed for prejudicial error pursuant to Ark. Sup. Ct. R. 4-3(h), and no reversible errors were found.

Affirmed.